[No. B170486. Second Dist., Div. Three. Mar. 3, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK JOHAHN WASHINGTON et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are those portions enclosed within double brackets, [[ ]].

**COUNSEL**

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant Mark Johahn Washington.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant Evyn Delayne Mack.

Bill Lockyer, Attorney General, Robert R. Anderson, Pamela C. Hamanaka, Assistant Attorneys General, Jaime L. Fuster and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Mark Johahn Washington and Evyn Delayne Mack appeal the judgments entered after conviction by jury of two counts of kidnapping for the purpose of robbery, three counts of robbery, three counts of assault with a firearm and nine counts of false imprisonment. (Pen. Code, §§ 209, subd. (b)(1), 211, 245, subd. (a)(2), 236.)[1] The jury found Washington and Mack both personally used a firearm in the commission of each offense and that each offense was committed for the benefit of a criminal street gang. (§§ 12022.53, subd. (b), 186.22, subd. (b)(1).) We reverse the convictions of kidnapping for the purpose of robbery but otherwise affirm the judgments and remand for resentencing.

## SUMMARY

Appellants committed a takeover robbery of a bank. While Mack robbed the tellers, Washington moved the bank manager from her office to the vault room, a distance of approximately 25 feet, and forced the manager to open the vault with the assistance of a teller who moved from the teller area to the vault room, a distance of approximately 15 feet. Appellants took cash from the vault, then fled.

■ At the close of the People's evidence, appellants sought dismissal of the counts that alleged kidnapping for the purpose of robbery on the ground the movement of the manager and the teller was merely incidental to the robbery, citing *People v. Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225]. *Daniels* held a conviction of kidnapping for the purpose of robbery in violation of section 209, subdivision (b), commonly referred to as aggravated kidnapping, requires "movement of the victim that is not merely incidental to the commission of the underlying crime and that increases the risk of harm to the victim over and above that necessarily present in the underlying crime itself." (*People v. Martinez* (1999) 20 Cal.4th 225, 232 [83 Cal.Rptr.2d 533, 973 P.2d 512]; see *People v. Daniels, supra,* at p. 1139.)[2]

The trial court noted the absence of any published case applying *Daniels* to a bank robbery situation in which the victims are transported from a public

---

[1] All further statutory references are to the Penal Code.

[2] Section 209, subdivision (b), provides: "(1) Any person who kidnaps or carries away any individual to commit robbery [or other enumerated crimes] shall be punished by imprisonment in the state prison for life with possibility of parole. [¶] (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."

area of a bank to the secure setting of a vault room. The trial court found the movement of the victims in this case increased the risk of harm and, therefore, the evidence presented a jury question as to whether appellants had committed aggravated kidnapping.

On appeal, appellants renew their challenge to the counts alleging kidnapping for the purpose of robbery. They also claim insufficient evidence in several other respects, sentencing error and an error in the abstract of judgment.

In the published portion of the opinion, we conclude the brief movement of the manager and the teller from the public area of the bank to the vault room was incidental to the robbery within the meaning of *Daniels*. Accordingly, we reverse the convictions of kidnapping for the purpose of robbery and remand for resentencing on the remaining counts and enhancements. In the unpublished portion of the opinion, we reject appellants' remaining claims.

## BACKGROUND

1. *The bank robbery.*

On April 25, 2002, at approximately 9:00 a.m., Carol Sierra saw Washington emerge from a Ford Mustang parked next to her car and enter the Washington Mutual Bank in Palmdale carrying a sawed-off shotgun.

Tellers Jerome Maudlin and Diane Reynoso were assisting their first customers of the day. The lobby of the bank contained a line of customers. Mack jumped onto the counter and announced, "This is a mother fucking robbery, nobody push any buttons, don't touch anything. Everybody get down on the floor." Mack had what appeared to be a handgun wrapped in a blue bandanna and he wore a dark blue or black bandanna over the lower portion of his face. When Mack jumped to the teller area, the object in the blue bandanna struck Maudlin below the right eye. The object felt hard, like a piece of metal, and the blow left a mark on Maudlin's face. Mack grabbed Reynoso by the hair and threw her to the floor.

Mack directed Maudlin to empty the cash drawers into a cloth bag. When Maudlin had difficulty, Reynoso rose to assist him. Mack alternately pointed the bandanna-covered object at Maudlin and Reynoso as they emptied cash drawers at his direction.

Bank manager Debbie Reif was speaking to a 911 operator when Washington entered her office wearing a dark blue ski mask over his face and carrying a sawed-off shotgun. Washington pointed the shotgun at Reif's head

and demanded "the money." Reif indicated she needed a second set of keys to open the vault, then went to the door of the office and asked Reynoso to assist her. Reynoso left the tellers' area and went with Reif and Washington to the vault room.

Rief testified she traveled a distance of approximately nine feet from the office to the door of the vault room and five or six additional feet into the vault room. Reynoso testified she moved approximately 15 feet from the teller area to the vault room but had to return to the teller area to retrieve her keys, which Reif needed to open the vault.

After Reynoso gave Rief her keys, Mack pressed the bandanna-covered object into Reynoso's chest and ordered her to the floor. Rief opened the vault and removed cash that Washington placed into a bag. One of the robbers said, "Thank you very much. Have a nice day," before they walked out the back door of the bank. The initial loss to the bank was approximately $160,000.

### 2. *Investigation.*

Shortly after the robbery, sheriff's deputies traced the Mustang parked in front of the bank to Washington at an address on Olive Drive in Palmdale. Deputies went to the address and spoke to Darnetta Wheat, who indicated Washington had just telephoned her from a residence on Via Del Rio in Palmdale, approximately one mile northeast of the bank. At about 10:30 a.m., sheriff's deputies found Washington, Mack and two females in the Via Del Rio residence. At a field showup, Reynoso and Maudlin each indicated the physical appearance of Washington and Mack matched the physical characteristics of the robbers.

In the Via del Rio residence, deputies found cash totaling $128,835, including five bills whose serial numbers the bank previously had recorded in the event of a robbery. A loaded shotgun was found in the bathroom closet.

### 3. *Verdicts, findings and sentencing.*

The jury found appellants guilty as charged and found true personal use of a firearm and criminal street gang enhancements as to each appellant and each count. The trial court sentenced Washington and Mack to substantial prison terms, in each case selecting kidnapping for the purpose of robbery as the principal term.[3]

---

[3] The trial court sentenced Washington to life with a minimum term of 15 years before parole eligibility plus 27 years and 4 months. The trial court sentenced Mack to a second strike term (§§ 1170.12, 667, subds. (b) through (i)) of life with a minimum term of 30 years before parole eligibility plus 35 years and 4 months.

## DISCUSSION

1. *The evidence is insufficient to support the convictions of kidnapping for the purpose of robbery.*

Appellants contend application of the two-part *Daniels* test to the facts of this case reveals the movement of bank manager Reif and teller Reynoso to have been merely incidental to the commission of robbery. Thus, the evidence was insufficient to support a conviction of kidnapping for the purpose of robbery.

 a. *General principles.*

As previously noted, *Daniels* held a conviction of kidnapping for the purpose of robbery requires "movement of the victim that is not merely incidental to the commission of the underlying crime and that increases the risk of harm to the victim over and above that necessarily present in the underlying crime itself." (*People v. Martinez, supra,* 20 Cal.4th at p. 232; see *People v. Daniels, supra,* 71 Cal.2d at p. 1139.) This has been referred to as the "two-part *Daniels* . . . test." (*People v. Rayford* (1994) 9 Cal.4th 1, 20 [36 Cal.Rptr.2d 317, 884 P.2d 1369].)

"In determining 'whether the movement is merely incidental to the [underlying] crime . . . the jury considers the "scope and nature" of the movement. [Citation.] This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong.' [Citations.]" (*People v. Martinez, supra,* 20 Cal.4th at p. 233, citing *People v. Rayford, supra,* 9 Cal.4th at p. 12 and *People v. Daniels, supra,* 71 Cal.2d at p. 1128.)

" 'The second prong of the *Daniels* test refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in [the underlying crime]. [Citations.] This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. [Citations.]' [Citations.]" (*People v. Martinez, supra,* 20 Cal.4th at p. 233.)

 b. *Daniels.*

In *Daniels,* the defendants were alleged to have robbed and raped three victims in their homes, moving the victims from room to room 18 feet, five to six feet, and 30 feet, respectively. *Daniels* ruled such brief movements were merely incidental to the associated offenses. (*People v. Daniels, supra,*

71 Cal.2d at p. 1139.) *Daniels* held section 209 defined aggravated kidnapping "to exclude from its reach not only 'standstill' robberies [citation] but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. [Citations.]" (*People v. Daniels, supra,* at p. 1139.) *Daniels* observed that "when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209." (*Id.* at p. 1140.)

Numerous cases illustrate these principles. (See, e.g., *People v. Morrison* (1971) 4 Cal.3d 442, 443 [93 Cal.Rptr. 751, 482 P.2d 663] [movement up and down stairs and into various rooms of residence incidental to robbery]; *People v. Smith* (1971) 4 Cal.3d 426, 427 [93 Cal.Rptr. 743, 482 P.2d 655] [movement of a hotel clerk about an office and then to a second floor room insufficient to sustain a conviction for kidnapping for the purpose of robbery]; *People v. Killean* (1971) 4 Cal.3d 423, 424 [93 Cal.Rptr. 742, 482 P.2d 654] [movement of victims across apartment threshold and through several rooms looking for valuables was incidental to robbery]; *People v. Adame* (1971) 4 Cal.3d 417 [93 Cal.Rptr. 740, 482 P.2d 652] [movement of supermarket employees from check stand and manager's office to the safe was incidental to robbery]; *People v. Mutch* (1971) 4 Cal.3d 389, 397–399 [93 Cal.Rptr. 721, 482 P.2d 633] [movement of 30 to 40 feet in a business establishment from one room to another room where the safe was located was incidental to robbery]; *People v. Williams* (1970) 2 Cal.3d 894, 902–904 [88 Cal.Rptr. 208, 471 P.2d 1008] [movement of gas station attendant from cash register to locked bathroom and then around premises was incidental to the robbery]; *People v. John* (1983) 149 Cal.App.3d 798, 805 [197 Cal.Rptr. 340] [movement of 465 feet inside "interconnected living quarters shared by [victim] and his parents" was incidental to robbery].)

c. *Application here.*

The bank in question occupies a retail space 35 feet wide and 70 feet deep.[4] The bank is on one level with approximately two-thirds of the floor space open to the public. The rear 12 feet of the bank are devoted to restrooms, a break room and the vault room, all connected by a common

[4] This court, on its own motion, has ordered the trial exhibits transmitted from the superior court for our review. People's exhibit No. 1 is a diagram of the layout of the bank.

hallway that runs from one side of the bank to the other and out the back door on the rear wall. Reif's office is on the right hand side of the bank at the rear of the public area. The vault room is directly across the bank from Reif's office and behind the teller area. To enter the vault room, one must first enter the common hallway and go to the second door on the left, the first door being the entrance to the teller area.

With respect to asportation, Reynoso testified she moved approximately 15 feet from the teller area to the vault room. The parties note Reynoso moved a total distance of 45 feet because Reynoso had to return to the teller area to get a key needed to open the vault. However, Reynoso moved only 15 feet in absolute terms, traversing that distance three times.

Reif testified she moved a total of approximately 15 feet. However, based on the diagram of the bank, it appears Reif underestimated the distance she traveled from her office to the vault room by about 10 feet. Reif's testimony indicates she moved essentially from one side of the bank to the other, which appears to be a distance of at least 25 feet.

These discrepancies in the distance each victim moved do not alter our analysis. Assuming Reynoso moved 45 feet and Reif moved 35 feet, from one wall to the other, the movement was insufficient to support a conviction of aggravated kidnapping.

We reach this conclusion because the movement occurred entirely within the premises of the bank and each victim moved the shortest distance between their original location and the vault room. Thus, there was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault. Also, given that the cooperation of two bank employees was required to open the vault, the movement of both Reif and Reynoso was necessary to complete the robbery. After appellants took the money from the vault, they left quickly and without incident.

On these facts, it must be concluded the brief movement of Reif and Reynoso to the bank's vault room was incidental to the robbery within the meaning of *Daniels* and thus was insufficient to support a conviction of kidnapping for the purpose of robbery.

In denying a motion to dismiss at the close of the People's evidence, the trial court distinguished *Daniels* on the ground there appeared "to be an obvious difference between moving [someone] around in a home versus moving [a victim] around in a bank, which has public areas and private areas and super private areas like the safe area, which is obviously meant to be an area as far removed from the public as possible . . . ." The trial court

indicated its research had not disclosed any case that applied *Daniels* to movement of a victim to a vault room during a bank robbery.

The trial court noted Reynoso and Reif were moved from a public area to an area of "total isolation" in the vault room "away from other employees and customers who might . . . have rendered assistance and prevented further crimes being committed . . . ." The trial court concluded the question of whether the distance moved by the victims was sufficient to constitute aggravated kidnapping was for the jury to decide and denied the request to dismiss the counts.

However, the movement in this case must be seen as equivalent to the movement of victims to the location of safes in offices or locations out of public view in other types of businesses. (See, e.g., *People v. Adame, supra,* 4 Cal.3d at p. 418 [movement of supermarket employees to the safe]; *People v. Mutch, supra,* 4 Cal.3d at pp. 397–399 [movement to safe]; *People v. Williams, supra,* 2 Cal.3d at pp. 902–904 [movement around gas station premises including to a locked bathroom].)

█ The rule to be derived from these cases is that robbery of a business owner or employee includes the risk of movement of the victim to the location of the valuables owned by the business that are held on the business premises. Many retail businesses hold large amounts of cash or other valuable personal property on the business premises, frequently in a secure area away from public view, often in a safe or a vault. No principled distinction can be made between those businesses and the bank in question here. The fact thresholds within the business are crossed cannot elevate robbery to aggravated kidnapping, given that all of the movement occurred within close proximity to where the robbery commenced and the only thresholds crossed were those that separated appellants from the bank's property.

█ The trial court erred in favor of caution by permitting the aggravated kidnapping counts to go to the jury. However, notwithstanding the jury's verdicts on these counts, the evidence does not support them. The applicable precedents reveal that brief movement of a robbery victim within business premises does not qualify as aggravated kidnapping.

d. *The People's argument to the contrary is not persuasive.*

The People adopt the trial court's view and argue the movement of Reif and Reynoso from an area open to public view to the vault room, an area that was more isolated and less accessible, substantially changed their environment and increased the risk of harm over and above that inherent in robbery, decreased the likelihood of detection and enhanced the opportunity for

appellants to commit additional crimes. (*People v. Martinez, supra,* 20 Cal.4th at p. 233.) Essentially, they assert these factors overcome the apparent application of *Daniels,* even where the movement is brief because distance alone is not determinative and the two parts of the *Daniels* test are interrelated. (*People v. Martinez, supra,* at p. 233; *People v. Rayford, supra,* 9 Cal.4th at p. 12.)

■ However, *any* movement of a robbery victim increases the risk of harm to the victim over and above that present in a standstill robbery. Where the movement of a robbery victim is substantially similar to that found insufficient to support a conviction of aggravated kidnapping in *Daniels* and its progeny, analysis of whether the movement of the victim increased the risk of harm need not be undertaken. Indeed, a finding of sufficient movement in this case would eliminate the first part of the test in favor of a test based entirely on increased risk of harm. Clearly, that is not the law.

■ The discussion in *Martinez* illustrates this point. *Martinez* held the asportation standard applicable to simple kidnapping, movement of the victim that is substantial in character, applied to the offense of kidnapping a victim under 14 years of age in violation of section 208, subdivision (b). *Martinez* discussed asportation required for simple kidnapping at length, eventually distinguishing it from that required for aggravated kidnapping. *Martinez* noted increased risk of harm was not needed for simple kidnapping but held that the trier of fact may consider more than "actual distance" in determining whether the movement of the victim was " 'substantial in character' " as required for simple kidnapping. (*People v. Martinez, supra,* 20 Cal.4th at p. 235.) *Martinez* affirmed the "historically recognized" rule that "for both aggravated and simple kidnapping, limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable." (*Id.* at p. 236.)

■ *Martinez* observed the "two prongs of aggravated kidnapping are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed environment without also considering whether that change resulted in an increase in the risk of harm to the victim." Thus, in determining whether movement of a victim is " 'substantial in character' " the jury may consider the " 'scope and nature' of the movement or changed environment, and any increased risk of harm." (*People v. Martinez, supra,* 20 Cal.4th at p. 236.)

*Martinez* continued: "At the same time, we emphasize that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance. [¶] In addition, in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality. . . ." (*People v. Martinez, supra,* 20 Cal.4th at p. 237.)

 The jury's ability to consider evidence related to the increased risk of harm required for aggravated kidnapping presupposes the sufficiency of the evidence to support the conviction. However, as implied by the *Martinez* discussion, where *Daniels* applies, the evidence is insufficient to support a conviction of aggravated kidnapping as a matter of law and thus there is nothing for the jury to consider.

e. *The rape cases cited by the People are distinguishable.*

The People also rely on *People v. Salazar* (1995) 33 Cal.App.4th 341, 347–348 [39 Cal.Rptr.2d 337] and *People v. Shadden* (2001) 93 Cal.App.4th 164, 169–170 [112 Cal.Rptr.2d 826], cases involving rape and attempted rape, respectively, that have adopted the view of the *Daniels* test they espouse here, namely, that a substantial change in environment constitutes sufficient asportation even where the movement might otherwise have been incidental to the underlying offense.

In *Salazar,* the victim was dragged 29 feet from a motel hallway into a motel bathroom. *Salazar* held the jury "could find the movement crossed significant boundaries (from the public walkway into the motel room bathroom) and was not a necessary or a natural part of committing the rape." (*People v. Salazar, supra,* 33 Cal.App.4th at p. 347.) In the course of its discussion, *Salazar* distinguished aggravated kidnapping for rape from aggravated kidnapping for robbery and noted that although rape may be committed without movement of the victim, "the commission of a robbery may frequently require that a victim be moved to the property which is the object of the robbery . . . ." (*Id.* at p. 348, fn. 8.)

In *People v. Shadden, supra,* 93 Cal.App.4th 164, the defendant moved a video store owner nine feet into a small back room of the store where he attempted to rape her. *Shadden,* citing *People v. Salazar, supra,* 33 Cal.App.4th at page 348, footnote 8, observed that rape does not necessarily require movement and concluded the movement of the victim did not have to be "great in distance" because it "changed [the victim's] environment." (*People v. Shadden, supra,* at p. 169.)

 *Salazar* and *Shadden* both rely on the proposition that rape is different than robbery for the purposes of aggravated kidnapping. Because this case involves robbery, *Salazar* and *Shadden* are distinguishable.

A similar conclusion was reached in *People v. Hoard* (2002) 103 Cal.App.4th 599, 607 [126 Cal.Rptr.2d 855]. In *Hoard*, the defendant moved two female employees of a jewelry store about 50 feet to the office at the back of the store, where he bound and gagged the employees, then proceeded to remove jewelry from the display cases. *Hoard* held the "movement of the two women served only to facilitate the crime with no other apparent purpose." (*Id.* at p. 607.)

The People counter that movement of Reif and Reynoso was not necessary to commit robbery because appellants robbed Reynoso and Maudlin in the teller area before they moved Reif and Reynoso to the vault room.

However, the primary object of a bank robbery is to obtain money from the vault. The fact appellants also committed a "standstill" robbery of Reynoso and Maudlin in the teller area does not mean the movement of Reif and Reynoso to the bank vault constituted aggravated kidnapping. As in *Daniels*, appellants "had no interest in forcing their victims to move just for the sake of moving; their intent was to commit robberies . . . , and the brief movements which they compelled their victims to perform were solely to facilitate such crimes. It follows, a fortiori, that those movements were 'incidental to' the robberies . . . ." (*People v. Daniels, supra,* 71 Cal.2d at pp. 1130–1131.)

### f. *Conclusion.*

For all the foregoing reasons, we conclude the convictions of kidnapping for the purpose of robbery in count 1 and count 17 must be reversed. We therefore need not address appellants' further claims the trial court should have instructed the jury on false imprisonment as a lesser offense included within kidnapping for the purpose of robbery or the assertion defense counsel rendered ineffective assistance in failing to request instruction on false imprisonment.

[[ ]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 290.

## DISPOSITION

The convictions of kidnapping for the purpose of robbery in counts 1 and 17 are reversed as to both appellants. In all other respects, the judgments are affirmed. As to each appellant, the matter is remanded for resentencing.

Kitching, J., and Aldrich, J., concurred.

On March 28, 2005, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied June 15, 2005.