Filed 6/19/13  P. v. Lopez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LUCIO ROJAS LOPEZ,<br><br>  Defendant and Appellant. | G046822<br><br>(Super. Ct. No. 10NF1794)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Daniel J. Didier, Judge.  (Retired judge of the Orange Super.Ct. assigned by the Chief Justice pursuant to art. VI, §6 of the Cal. Const.)  Affirmed.

Law Offices of Allen G. Weinberg and Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted appellant of aggravated kidnapping (Pen. Code, § 209, subd. (b)(1)) and commission of a forcible lewd act upon a child under the age of 14 (Pen. Code, § 288, subd. (b)(1)).[1]  He was sentenced to life in prison with the possibility of parole.  On appeal, he contends his aggravated kidnapping conviction must be reversed because his movement of the victim was incidental to his commission of the lewd act upon her, and therefore did not meet the asportation requirement of section 209, subdivision (b)(1).  He also contends that section is unconstitutionally vague because it does not provide adequate notice of what is prohibited conduct.  We reject both these arguments but conclude, as has the Attorney General, that his sentence was incorrectly calculated, and he deserves an additional 101 days of local conduct credits pursuant to section 2933.1.

FACTS

Martin and Elizabeth shared their residence with Elizabeth's cousin M. and her nine-year-old daughter Casey.  Appellant Lucio Rojas Lopez also lived in the house.  M. and Casey slept on a couch in the living room, appellant in a bedroom 16 feet away.

One night, Martin and appellant came home together.  Martin was a bartender and he gave appellant a ride home from the bar after it closed.  They both retired to their bedrooms, but later Elizabeth came back from using the bathroom and asked Martin where Casey was.  Martin went looking for her.  When M. didn't know where she was, he looked in the bathroom.  When she was not there, he went to appellant's room.  The door was locked and Martin called for appellant.  Appellant opened the door slightly and peered out.  Martin asked where Casey was and, when

---

[1]     All further statutory references are to the Penal Code.

2

appellant did not respond, he pushed the door open and found Casey, standing behind appellant and trembling.

Casey said appellant had carried her into the bedroom, pulled down her pajama bottoms, and begun touching her "bottom." She said he woke her up on the couch, put his hand over her mouth, and carried her into his bedroom.[2] While he was touching her bottom and her upper thighs, she was trying to scream and kicking appellant, but to no avail.

Interviewed by the police, appellant made damaging admissions and concluded he was "sick-minded." He said he was very drunk and blamed the incident on "a fucking temptation that sometimes dominates everyone."

DISCUSSION

I. Asportation

Section 209, subdivision (b)(1), requires asportation of the victim. The gravamen of any kidnapping offense is the carrying away of the victim, and California law with regard to aggravated kidnapping – a conglomeration of crimes gathered together in section 209, all of which focus on moving someone in order to carry out another crime such as robbery, rape, or child molestation – has developed a rich and somewhat complicated decisional history on this issue.

The briefing in this case expends a great deal of space and scholarship chronicling this history and applying the decisional interpretation of section 209, subdivision (b)(1) (kidnapping to commit a sex offense), to the facts of this case. The briefing is clear and cohesive enough to have allowed appellant to conclude, in his reply brief that, "The parties do not disagree about the law in this area, but they disagree as to whether the movement of the victim herein from a living room couch to a bedroom satisfied the asportation element prerequisites that it: 1) must not be incidental to the

---

[2] Casey's mother was apparently outside, engaged in a cellphone conversation when this happened, doubtless thinking her daughter was safe inside the house.

3

commission of the specified crime; and 2) increased the risk of harm above that inherent in the enumerated sexual offense."

While that may overstate somewhat the degree of agreement between the parties, it does provide a ready framework for the resolution of the first issue raised on appeal. Using that framework, we conclude case law establishes that the movement here was not incidental and did increase the risk of harm to Casey.

Contrary to appellant's assertion that "respondent cites no case that has upheld an aggravated kidnapping conviction where the movement is such a short distance," respondent has cited *People v. Shadden* (2001) 93 Cal.App.4th 164 (*Shadden*). *Shadden* dealt with facts not meaningfully distinguishable from those of our case. There a jewelry store sales clerk was dragged nine feet from the front of the store – open to the public – to a small back room, where her assailant intended to rape her. Nine feet is, of course, not only a short distance, but one shorter than the distance involved here.[3]

"Where movement changes the victim's environment, it does not have to be great in distance to be substantial. (*People v. Smith* [(1995)] 33 Cal.App.4th [1586,] 1593-1594 [defendant moved the victim from the driveway into a camper at the rear of the house].)" (*Shadden*, *supra*, 93 Cal.App.4th at p. 169.) Here, the victim was moved from the front room of the house open to view through windows and to anyone who entered through the front door, to a bedroom, thus interposing another closed door between the crime and any rescuer. We think it pretty clear this increased her danger, and, like the *Shadden* court, we see no reason to discuss distance beyond that.

As for whether the movement was merely incidental to the crime, we reject appellant's argument that any movement done to facilitate the crime is incidental. Were we to accept that view, we would pretty much abnegate section 209 entirely, since it

---

3   *Shadden* was criticized by two justices in the case of *People v. Hoard* (2002) 103 Cal.App.4th 599, 606-607, but *Hoard* was a robbery case, and the majority was at pains to point out that while movement of an intended rape victim could result in greater danger, removing store clerks from the scene of the robbery to a room where they were tied up and out of the perpetrators' metaphorical hair might actually make them safer. Obviously, that consideration is not at play here, and, as we relate below, the issue was resolved in favor of the *Shadden* court (and Justice Ramirez's dissent in *Hoard*) by our Supreme Court in *People v. Dominguez* (2006) 39 Cal.4th 1141 (*Dominguez*).

4

would be impossible for the prosecution ever to satisfy the asportation requirement. Movement of the victim is *always* done to facilitate the crime. That is the whole point. [4]

Instead, we adopt the analysis of our Supreme Court in *People v. Rayford* (1994) 9 Cal.4th 1 (*Rayford*), the case that caused the legislature to move aggravated kidnapping out of section 208 and into its own section 209. There, in dealing with kidnapping for robbery, the court noted the difficulty of devising a formulaic solution for the issue of whether movement is incidental. It said, "[T]he jury considers the 'scope and nature' of the movement. [Citation.] This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy [this requirement]." (*Rayford*, at p. 12.) The court said the determination whether movement is incidental must be resolved "by considering the context of the environment in which the movement occurred." (*Ibid*.) And it must be remembered that whether the movement is incidental is not a question to be determined in a vacuum, but is "interrelated" to the question of whether the movement has increased the victim's danger. (*Ibid*.; Cited with approval in *Dominguez*, *supra*, 39 Cal.4th at p. 1152.)

This is, obviously, an individualized task, a process that will be different in every case. But we are convinced the Supreme Court made this process much easier for us in *Dominguez, supra,* 39 Cal.4th 1141, when it explained, "Measured distance, therefore, is a relevant factor, but one that must be considered in context, including the nature of the crime and its environment. In some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient. For example, moving robbery victims between six and 30 feet within their home or apartment (see [*People v.*] *Daniels* [(1969)] 71 Cal.2d [1119,] 1123-1124 [(*Daniels*)] or 15 feet from the teller area of a bank to its vault (*People v. Washington* (2005) 127 Cal.App.4th 290, 299 . . .) may be viewed as merely

---

[4] Indeed, when Martinez entered the house, he did not see Casey and had to search further. That sequestration of the victim was the reason for moving her – to prevent interruption.

incidental to the commission of the robbery and thus insufficient to satisfy the asportation requirement of aggravated kidnapping.  Yet, dragging a store clerk nine feet from the front counter of a store to a small back room for the purpose of raping her (see *People v. Shadden* [, *supra*,] 93 Cal.App.4th [at p.] 167 . . .) or forcibly moving a robbery victim 40 feet within a parking lot into a car (see *People v. Jones* (1999) 75 Cal.App.4th 616, 629 . . .) might, under the circumstances, substantially increase the risk of harm to the victim and thus satisfy the asportation requirement.  These examples are illustrative only; each case must be considered in the context of the totality of its circumstances."  Moving a child 16 feet from the living room of a home to a bedroom with a closed door not only might, but did, substantially increase the risk of harm to her.  Considering the facts of this case, where the crime could have been accomplished in the living room, but was moved to another room solely to decrease the likelihood of detection, make escape more difficult, and facilitate other crimes (*ibid*.), we are satisfied asportation was adequately established.

## II. Vagueness

Appellant's argument that section 209, subdivision (b)(1), is unconstitutionally vague is related to his contention he should not be subject to kidnapping sanctions for moving his victim a mere 16 feet.  He complains that "if the statute is applied in a manner which that [*sic*] merely moving a victim 16 feet from a couch to a bedroom is 'beyond that merely incidental,' then section 209, subdivision (b)(2) fails to give a person reasonable notice of what constitutes a violation of section 209."

We are unable to construct a syllogism that works for this argument.  Appellant's claim is that interpretation of the statute to make such a small movement sufficient to constitute a kidnapping does not enable a miscreant to distinguish between "the greatly enhanced penalty they are subject to under section 209 versus simple kidnapping in section 207."  But the difference between section 207 and section 209 has never been the distance involved.  The difference between the two crimes is the purpose

for which the victim is moved. If the victim is culpably moved for one of the purposes designated in section 209 ("robbery, rape, spousal rape, oral copulation, sodomy, or any violation of Section 264.1, 288, or 289" or ransom) the crime is aggravated kidnapping under section 209. If the victim is moved for another purpose, the crime is a simple kidnapping under section 207.

The "notice" of which crimes fall under section 207 and which fall under section 209 has nothing to do with distance. It could hardly be clearer, and we think it plenty clear enough to "avoid arbitrary and discriminatory enforcement." (*People v. Townsend* (1998) 62 Cal.App.4th 1390, 1400.) As our Supreme Court said in *Daniels*, *supra*, 71 Cal.2d at pages 1128-1129, "The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed, a wide spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the 'reasonable or prudent' speed to drive his car in the circumstances [citation], while another may be incarcerated in state prison on a conviction of willful homicide if he misjudges the 'reasonable' amount of force he may use in repelling an assault [citations] . . . . Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." Nothing in this opinion undermines the constitutional validity of the notice provided by section 209.


### III. Conduct Credits

The trial court, in calculating the amount of time appellant had spent in custody, gave him 678 days of actual credit for time served, but "zero pre-sentence conduct time." This was error. As appellant argues, and the Attorney General concedes, only defendants convicted of murder are stripped of their conduct credits (§ 2933.2). Appellant should have received 15 percent of the 678 days he spent in custody as conduct credits. We therefore order the abstract of judgment amended to add 101 days of conduct

credits, for a total of 779 days credited. The trial court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

## DISPOSITION

In all other respects, the judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.