Filed 1/30/15  P. v. Hayes CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B252992 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA073029) |
| v. | |
| JAHRELL L. HAYES | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David B. Gelfound, Judge.  Affirmed in part, reversed in part.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel and Tita Nguyen, Deputy Attorneys General for Plaintiff and Respondent.

_____

Appellant Jahrell L. Hayes was convicted, following a jury trial, of six counts of aggravated kidnapping to commit robbery in violation of Penal Code[1] section 209, subdivision (b), seven counts of kidnapping in violation of section 207, 10 counts of second degree robbery in violation of section 211, one count of possession of ammunition in violation of section 30305, subdivision (a)(1), and two counts of false imprisonment by violence in violation of section 236. The jury also found the allegation that appellant personally used a firearm in the commission of the offenses to be true. The trial court found that appellant had suffered a prior serious or violent felony conviction. The trial court sentenced appellant to an indeterminate life term of 124 years to life for the kidnapping for robbery convictions and associated firearm enhancements plus a determinate term of 146 years 6 months for the remainder of the convictions and enhancements.

Appellant appeals from the judgment of conviction, contending there is insufficient evidence to support his six convictions for kidnapping to commit robbery. Appellant requests that we independently review the in camera hearing on appellant's *Pitchess*[2] motion for discovery of peace officer personnel records. Appellant also contends the abstract of judgment should be corrected to accurately reflect the court's sentence on count 9.

We find insufficient evidence to support the count 1 and count 9 kidnapping for robbery convictions for Matthew Covarrubias and Mary Stephens, and reverse those convictions. Because we reverse count 9, we need not correct the sentence on that count. Appellant's indeterminate sentence is reduced to 86 years to life in state prison for the remaining kidnapping for robbery convictions, consisting of three terms of 24 years to life for the counts 2, 14 and 34 convictions and associated firearm enhancements, and one term of 14 years to life for the count 35 conviction. Appellant was convicted of the robbery of Covarrubias and Stephens in counts 3 and 10. A total sentence of 22 years

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

was imposed on those counts but stayed pursuant to section 654. That stay is now lifted. This increases appellant's determinate term from 146 years 6 months to 168 years 6 months.[3] We affirm the judgment of conviction in all other respects.


Facts

Appellant and Mark Wise committed a series of store robberies in February and March 2012. They robbed Radio Shack stores in Granada Hills, Palmdale, and Chatsworth and also an AT&T store in Santa Clarita. The robbers took cell phones and other small electronics, primarily iPhones and iPads. The Radio Shack in Chatsworth had only one employee working at the time of the robbery. The other stores had two or more employees. These robberies are discussed in more detail in section 2 below, discussing the sufficiency of the evidence to support appellant's convictions for kidnapping for robbery.

A tracking device was hidden in an iPhone box stolen from the AT&T store, the last of the four stores to be robbed. Los Angeles County Sheriff's Deputies were able to trace the device to the Hyde Park Motel on Crenshaw Boulevard in Los Angeles. There, they found appellant and Wise. There were numerous new boxed cell phones in two backpacks found in the room the men were renting. Sheriff's deputies recovered a computer tower system used for surveillance from a nearby dumpster. This proved to have footage of the AT&T store robbery.

Steve Ascencio, Julio Romero and Dean Bennett, who were present at the AT&T store robbery, were brought to the Hyde Park Motel for a field show-up. Ascencio identified appellant and Wise, as did Romero. Bennett only identified appellant. Employees from the Radio Shack stores identified appellant and Wise in six-pack photographic lineups, and identified appellant at the preliminary hearing and at trial.

---

[3]   This increase reflects the previously stayed term of 16 years imposed for the count 3 robbery of Covarrubias (the count 1 kidnapping for robbery victim) and the previously stayed term of 6 years imposed for the count 10 robbery of Stephens (the count 9 kidnapping for robbery victim).

Appellant presented no evidence at trial.

Discussion

1. *Pitchess* review

Appellant requests that we independently review the sealed transcript of the in camera hearing on his *Pitchess* motion for discovery of peace officer personnel records.

The trial court granted appellant's motion for discovery of complaints of false statements made by a Los Angeles County sheriff's deputy who was involved in the field show-up. On June 4, 2013, the court conducted an in camera review of the deputy's records and determined that there were no discoverable records.

When requested to do so by an appellant, we independently review the transcript of the trial court's in camera *Pitchess* hearing to determine whether the trial court disclosed all relevant complaints. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) We have reviewed the transcript of the in camera hearing and conclude that the trial court did not abuse its discretion in ruling that there were no relevant records to disclose to appellant. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330 [court's ruling is reviewed for abuse of discretion].)

2. Kidnapping to commit robbery

Appellant contends there is insufficient evidence to support his convictions for kidnapping for robbery in counts 1, 2, 9, 14, 34 and 35. We agree that the movements of Covarrubias in count 1 and Stephens in count 9 are insufficient to support the kidnapping for robbery convictions. There is sufficient evidence to support the convictions in counts 2, 14, 34, and 35.

a. Applicable law

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is

4

reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citations.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [internal quotation marks omitted].)

Kidnapping to commit robbery carries a penalty of life in prison "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).) The two requirements are interrelated. Whether the victim's forced movement was merely incidental to the robbery "is necessarily connected to whether it substantially increased the risk to the victim." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.)

When the robbery involves a business owner or employee, the robbery "includes the risk of movement of the victim to the location of the valuables owned by the business that are held on the business premises. Many retail businesses hold large amounts of cash or other valuable personal property on the business premises, frequently in a secure area away from public view, often in a safe or vault." (*People v. Washington* (2005) 127 Cal.App.4th 290, 300 (*Washington*).) In *Washington*, the robbers entered a bank, robbed the tellers, and moved one of the tellers 45 feet to the vault and the manager 35 feet to the vault, then used the teller's and manager's keys to open the vault. "There was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault." (*Washington, supra,* 127 Cal.App.4th at p. 299.) The court found this movement insufficient to support a conviction for aggravated kidnapping. (*Ibid.*) The court explained that "[t]he fact thresholds within the business are crossed cannot elevate

5

robbery to aggravated kidnapping, given that all of the movement occurred within close proximity to where the robbery commenced and the only thresholds crossed were those that separated appellants from the bank's property." (*Id*. at p. 300.)

If the business owner or employee is moved in excess of that needed for the robbery, there may be sufficient evidence for aggravated kidnapping. In *People v. James* (2007) 148 Cal.App.4th 446 (*James*), for example, the robbers moved an employee working outside the business to the locked door of the business and used him to gain access. Once the door was open, the robbers moved the outside employee inside, and forced him to lie on the floor with other workers for an hour, while the managers of the business were robbed of property held inside a cage. The court found that the movement of the employee from outside the door of the business to its inside floor took place after "defendant's purported purpose in moving [the employee] had been fulfilled." (*James, supra,* 148 CalApp.4th at p. 457.) The court concluded that the movement of the employee inside the business after his purpose had been fulfilled was not incidental to the robbery, and was sufficient to support an aggravated kidnapping conviction. (*Id*. at p. 458.) Similarly, in *People v. Vines* (2011) 51 Cal.4th 830 (*Vines*), the robber took the manager of a restaurant to the counter area where the safe was located, and ordered him to open the safe. The manager did so. Then the robber moved the manager to the rear of the business, where three employees were standing. The robber then took all four downstairs via a hidden staircase to the freezer and locked them in the freezer. (*Vines, supra,* 51 Cal.4th at pp. 840-841.) The court found that the scope and nature of this movement was not merely incidental to the commission of the robbery and substantially increased the risk of harm to the victims, and so was sufficient to support an aggravated kidnapping conviction. (*Id*. at p. 871.)

b. Granada Hills Radio Shack robbery (counts 1 and 2)

There were two employees in the store at the time of the robbery, Covarrubias and Payam Shokouhmand. The movement of Covarrubias was incidental to the robbery and

6

so is insufficient to support a conviction for kidnapping for robbery. The movement of Shokouhmand is sufficient to support the conviction for kidnapping for robbery.

Initially, one of the robbers moved Covarrubias to the back room where the cage holding valuables was located, while Shokouhmand stayed in the front with the other robber. The robber told Covarrubias to open the cage, so Covarrubias returned to the front and got the keys to the cell phone storage area from Shokouhmand. Covarrubias then returned to the back with the keys and opened the door to the cage. The robber began removing phones. At this point, the second robber and Shokouhmand were still in the front of the store removing cash from the cash register. After the second robber picked up the money, he and Shokouhmand came to the back room. When both Covarrubias and Shokouhmand were in the back room, appellant demanded that the employees tell him the location of the store's security camera recorder. Covarrubias explained that it was broken. The robbers told them to sit on the floor in a corner area, then left.

The movement of Covarrubias was incidental to the robbery. As was the case with the bank employees in *Washington*, *supra*, 127 Cal.App.4th 290, Covarrubias was moved to an area of the business where valuables were stored, and ordered to unlock the storage area. Although Covarrubias was moved again when it turned out that he did not have the keys necessary to open the storage area, this additional movement was necessary to obtain the valuables in the storage area. Thus, as was the case in *Washington*, "[t]here was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault." (*Washington, supra,* at p. 299.) The movement of the two employees in *Washington* was incidental to the robbery and the movement of Covarrubias necessarily was as well. The evidence is not sufficient to support appellant's conviction for the aggravated kidnapping of Covarrubias.

This analysis does not apply to the movement of Shokouhmand. Covarrubias had already unlocked the door to the storage area and one of the robbers had begun removing the cell phones when Shokouhmand was brought to the back area. Shokouhmand was

7

ordered to sit in the corner. His movement was not necessary for the robbery. (See *James, supra*, 148 Cal.App.4th 446; see also *Vines, supra,* 51 Cal.4th at pp. 870-871.)

Respondent contends "appellant had completed a robbery . . . against Covarrubias and Shokouhmand once he had successfully ordered Shokouhmand to give him all of the money inside the register at the front of the store. . . . Accordingly, the facts undermine appellant's argument that the movement of the victims was necessary to accomplish a robbery." This argument simply ignores the fact that the robbers took valuable cell phones from the back of the store. The robbers began their efforts to take the cell phones simultaneously with their effort to take the cash from the register. In fact, the value of the cell phones was at least $18,000, far exceeding the value of the cash. It is not reasonable to view the robbery as complete once the cash was obtained. (See *Washington, supra*, 127 Cal.App.4th at p. 294 [movement of manager and a teller was incidental to robbery when, while one robber "robbed the tellers, Washington moved the bank manager from her office to the vault room . . . . and forced the manager to open the vault with the assistance of a teller who moved from the teller area to the vault room"].)

Respondent also contends the movement of Covarrubias and Shokouhmand significantly decreased the likelihood of detection and at the same time significantly increased the risk of harm to them. Covarrubias was moved to the location of the valuables so that the robbers could access the valuables. This was a normal risk of a business robbery. (*Washington, supra*, 127 Cal.App.4th at p. 300 ["The robbery of a business owner or employee includes the risk of movement of the victim to the locations of the valuables owned by the business that are on the business premises"].) We agree that the movement of Shokouhmand increased his risk of harm. While Shokouhmand was also moved to the location of valuables, his movement was not necessary for the robbers to obtain access to the valuables. Like the victims in *Vines, supra*, 51 Cal.4th 830 and *James, supra*, 148 Cal.App.4th 446, Shokouhmand's role in the robbery was over before he was moved into a less visible area and he was simply held there while the robbers completed the robbery and made their escape. The risk to Shokouhmand, like the risk to the manager in *Vines* and the outside employee in *James*, was increased by

8

movement.  (See *Vines, supra,* at p. 871; *James, supra*, at p. 458.)  The movement of Shokouhmand is sufficient to sustain appellant's conviction for his aggravated kidnapping.


b.  Chatsworth Radio Shack robbery (count 9)

The only employee in the store at the time of the robbery was Mary Stephens.  There is insufficient evidence to support the conviction for kidnapping for robbery of Stephens.

While Stephens was waiting on a male customer, appellant entered the store.  He told Stephens to give him the money from the cash register.  She complied.  Appellant then told her to go to the back and open the cage.  The cage was where high value items such as cell phones were stored.  She went to the back and opened the cage.  The "customer" was there.  Appellant and the second man directed Stephens to get some plastic bags and put the merchandise, mostly iPhones, into the bags.  When she finished, they told her to kneel facing the wall and count to 100.  Stephens believed that appellant left the store, but he quickly re-appeared and told Stephens to give him the security tapes.  Stephens replied that the store had a digital video recorder (DVR).  Appellant ultimately pulled the DVR out of the wall and the two men left.

The movement of Stephens was incidental to the robbery.  As was the case with the bank employees in *Washington*, *supra*, 127 Cal.App.4th 290, Stephens was moved to an area of the business where valuables were stored, and ordered to unlock the storage cage.  There is simply no basis to distinguish the movements of Stephens from that of the two employees in *Washington* who were moved to the vault to unlock it.  The movement of the two employees in *Washington* was incidental to the robbery and the movement of Stephen necessarily was as well.  The movement is not sufficient to support appellant's conviction for the aggravated kidnapping of Stephens.

Respondent again contends the robbery was completed once the cash was taken from the cash register.  Again, respondent is simply ignoring the fact that the robbers took valuable cell phones from the back of the store.

Respondent also again contends the movement of the employee significantly decreased the likelihood of detection and at the same time significantly increased the risk of harm to them. Stephens was moved to the location of the valuables so that the robbers could access the valuables. This was a normal risk of a business robbery. (*Washington, supra*, 127 Cal.App.4th at p. 300 ["The robbery of a business owner or employee includes the risk of movement of the victim to the locations of the valuables owned by the business that are on the business premises"].)

Respondent points out that appellant did not leave immediately after obtaining all the cell phones, but stayed to get security footage. There is no significance to this fact. The DVR was in the back room and obtaining it did not involve any further movement of the victim.[4]

c. AT&T store (count 14)

There were three employees in the store at the time of the robbery: Ascencio, Sterling and Romero. Appellant challenges his conviction as to Ascencio. There is sufficient evidence to support this conviction.

---

[4] Respondent may be attempting to distinguish the facts in the present case from the facts in *Washington, supra*, 127 Cal.App.4th 290. Respondent had earlier argued: "Because the defendants left 'quickly and without incident' after they took the money from the vault" the court [in *Washington*] held that 'there was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault.' (*Id*. at p. 299.)" However, the holding of *Washington* is not based on the robber's speedy departure. The reference to the speedy departure simply underlined the fact that there was no gratuitous movement of the victims, as for example was the case in *People v. Vines, supra*, 51 Cal.4th 930 when the robbers moved the manager a significant distance after obtaining the money from the safe. The full quote from *Washington* makes this clear. It reads: "[T]he movement was insufficient to support a conviction of aggravated kidnapping. [¶] We reach this conclusion because the movement occurred entirely within the premises of the bank and each victim moved the shortest distance between their original location and the vault room. Thus, there was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault. . . . After appellants took the money from the vault, they left quickly and without incident." (*Washington, supra*, 127 Cal.App.4th at p. 299.)

Ascencio was helping the Bennett family when appellant and his companion began their robbery of the store.  The men ordered Romero and Sterling to the inventory room.  The door to the inventory room was locked, and Romero unlocked it.  The men then told Ascencio and the Bennett family to go to the inventory room.  There, they were told to lie on the floor.  Testimony by Ascencio and Bennett indicates Romero was opening the safe and putting valuables from the safe into bags when they arrived.[5]  During this time, another family came into the store, and was brought into the back room.  The second family's father and Ascencio began helping to load the electronics to get the robbers out "as fast as possible."

Ascencio was the last of the employees to be moved to the back room.  Romero had already unlocked the door to the back room which held the safe, and there is some testimony indicating that Romero had already unlocked the safe when Ascencio arrived.  Ascencio was ordered to lie on the floor.  He played no role in opening the safe.  He was treated in the same manner as the customers.  Thus, while Ascencio was moved to the location of valuables, his movement was not incidental to the robbery.  (See *James, supra*, 148 Cal.App.4th 446; see also *Vines, supra,* 51 Cal.4th at pp. 870-871.)  The movement increased the risk of harm to Ascencio and decreased the likelihood of detection.  (See *Vines, supra,* at p. 871; *James, supra*, at p. 458.)  The movement is sufficient to support appellant's conviction for the aggravated kidnapping of Ascencio.

Ascencio did later assist in the robbery by helping to load the electronics.  However, there is no indication that the robbers ordered Ascencio to help.  The robbers initially ordered Ascencio to lie on the floor with the customers, demonstrating that they did not move him to the back room to assist in the robbery.  The evidence indicates that Ascencio and a customer decided to help in order to get rid of the robbers faster.  This

---

[5]    We view the evidence in the light most favorable to the judgment, and thus accept Ascencio's and Bennett's account of the timing of the safe opening.  We note that Romero testified that he opened the safe after the employees and customers were brought to the back area.  Sterling testified that Romero began taking valuables out of the safe after the employees and customers were brought to the back room and told to lie on the floor.

11

volunteer activity did not transform his earlier movement to the storage area into a movement incidental to the robbery.

    d.  Palmdale Radio Shack (counts 34 and 35)

There were four employees in the Radio Shack at the time of the robbery. Appellant challenges his convictions as to Jose Cerda and Joshua Ramirez. There is sufficient evidence to support both these convictions.

Cerda and Ramirez were in the front of the store when appellant and his fellow robber entered. Two other employees, Dennis Cameron and Nestor Acosta, were in the storage area in the back. Appellant and his fellow robber entered. Appellant held Cerda and Ramirez at gunpoint and forced them to give him the cash from the cash register. Appellant's companion went to the back of the store, encountered Cameron and Acosta as they were leaving the storage area and forced them back into the storage area. The companion told Cameron to open the locked cage. Cameron got the keys from a desk. According to Cameron, as he was opening the storage cage, appellant brought Cerda and Ramirez to the back. The robbers loaded the cell phones into plastic bags.

The robbers appeared surprised and upset that the store had so few cell phones. After obtaining the DVR surveillance system from Cameron, the robbers told all the employees to empty their pockets and throw their money, credit cards and identification on the floor. The employees complied. The robbers left.

Although there are varying accounts of the robbery, Cameron testified that he was unlocking the door to the storage cage when Cerda and Ramirez were brought to the back area. Cerda and Ramirez were ordered to kneel against the wall. They played no role in the robbery of the business after their movement. Thus, while Cerda and Ramirez were

12

moved to the location of valuables, their movement was not incidental to the robbery.[6] (See *James, supra*, 148 Cal.App.4th 446; see also *Vines, supra,* 51 Cal.4th at pp. 870-871.) Like the movement of the victims in *Vines* and *James*, the movement of Cerda and Ramirez increased their risk of harm and decreased the likelihood of detection. (See *Vines, supra,* at p. 871; *James, supra*, at p. 458.) The movement is sufficient to support appellant's conviction for the aggravated kidnappings of Cerda and Ramirez.

The robbers did take personal property from Cerda and Ramirez while the two employees were in the back room, but there is nothing to indicate that the robbers moved the men there for the purpose of taking their personal property. It appears to have been an afterthought in reaction to the low number of cell phones in the store. Thus, this "standstill" robbery did not transform the earlier movement into one incidental to the business robbery.

Disposition

Appellant's count 1 and count 9 convictions for kidnapping for robbery are reversed. Appellant's total indeterminate sentence is now 86 years to life in state prison. The stay on the previously imposed determinate terms of 16 years for count 3 (consisting of the midterm of 3 years doubled to 6 years pursuant to the three strikes law plus a 10-year firearm enhancement) and 6 years for count 10 (consisting of the midterm of 3 years doubled to 6 years pursuant to the three strikes law) is lifted and those terms are now imposed. Appellant's determinate term is now 168 years 6 months. The clerk of the superior court is instructed to prepare an amended abstract of judgment reflecting these

---

[6]     We view the evidence in the light most favorable to the judgment. However, even if Cerda and Ramirez were brought to the back room before Cameron opened the cage, the movement would still not be incidental to the robbery. Like the victims in *Vines, supra*, 51 Cal.4th 830 and *James, supra*, 148 Cal.App.4th 446, Cerda's and Ramirez's roles in the robbery were over before they were moved into a less visible area and were simply held there while the robbers completed the robbery and made their escape.

changes, and to deliver a copy to the Department of Correction and Rehabilitation.  The judgment of conviction is affirmed in all other respects.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


GOODMAN, J.[*]

We concur:


TURNER, P.J.


KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.