Filed 10/1/14  P. v. Rodgers CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TYLER LEE RODGERS,<br><br>    Defendant and Appellant. | B250622<br><br>(Los Angeles County<br>Super. Ct. No. YA085322) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark S. Arnold, Judge.  Affirmed as modified.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Tyler Lee Rodgers (defendant) appeals from the judgment entered upon his conviction of attempted murder, aggravated kidnapping, robbery, and burglary. He contends that substantial evidence did not support the aggravated kidnapping conviction, that the sentence imposed for robbery was prohibited double punishment, and that he is entitled to three additional days of presentence custody credit. We agree that defendant is entitled to three additional days of presentence custody credit, but find no merit to defendant's remaining contentions. We thus modify the judgment to add the credits, but otherwise affirm.

## BACKGROUND

### Procedural history

Defendant was charged in a four-count information as follows: in count 1, with the attempted willful, deliberate, and premeditated murder of Naveed Mirza (Mirza), in violation of Penal Code sections 664 and 187, subdivision (a);[1] in count 2, with kidnapping to commit robbery in violation of section 209, subdivision (b)(1); in count 3, with second degree robbery in violation of section 211; and in count 4, with first degree residential burglary in violation of section 459. The information also alleged as to counts 1, 2, and 3, that defendant personally inflicted great bodily injury upon the victim within the meaning of 12022.7, subdivision (a), and that defendant personally used a firearm during the commission of the crimes within the meaning of section 12022.53, subdivision (b). For purposes of section 667, subdivision (a)(1), and the "Three Strikes" law (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)), the information alleged that defendant had suffered a prior serious or violent felony conviction or juvenile adjudication.

Defendant waived his right to a jury trial, and after a court trial, he was convicted of all counts as charged. In addition, the trial court found true the allegations that the attempted murder was willful, deliberate, and premeditated, that defendant had personally used a firearm during the commission of the crime, that defendant inflicted great bodily injury upon the victim, and that defendant had suffered a prior robbery conviction.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

On June 26, 2013, the trial court sentenced defendant to a total term of 40 years and eight months to life in prison. First, as to count 3, the court imposed the upper term of five years for the robbery of Mirza, doubled to 10 years as a second strike, plus 10 years for the gun use (§ 12022.53, subd. (b)). The court also imposed a three-year term for inflicting great bodily injury (§ 12022.7, subd.(a)), which the court stayed pursuant to section 654. As to count 4, the residential burglary, the trial court imposed one-third the middle term, 16 months, doubled as a second strike to two years eight months, to run consecutively. As to count 2, aggravated kidnapping, the court imposed a consecutive life term with the seven-year minimum parole period doubled to 14 years due to the second strike, plus 10 years for the gun use, three years for inflicting great bodily injury, and a five-year habitual criminal enhancement. As to count 1, attempted murder, the trial court sentenced defendant to a concurrent life term, with the minimum parole period doubled to 14 years as a second strike, to be served concurrently with count 1. The enhancement for great bodily injury was imposed and stayed pursuant to section 654. Defendant received credit for 306 days of actual custody and 45 days of conduct credit for a total of 351 days. The court also imposed mandatory fines and fees, ordered defendant to pay victim restitution, and scheduled a later hearing to determine the amount.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Dana Hadnett's home was burglarized on June 4, 2012, and multiple items were stolen. Defendant's fingerprints were found inside the house, as well as DNA which was determined to be a possible match to defendant.

On August 16, 2012, shortly before 3:00 p.m., defendant appeared in the Cigar and Smoke Shop, where shop employee Mirza was the only person present. Mirza testified to the events of that day and narrated surveillance videos which had captured most of the incident. Mirza was at the cash register when defendant entered the store carrying a long cardboard box in which he was hiding a shotgun. Defendant took the shotgun from the box, pointed it at Mirza's chest, and forced Mirza into the back room of the store. There

3

he ordered Mirza to handcuff himself and threatened to kill Mirza if he failed to comply. Defendant then returned to the front of the store, where he closed the front door and security gate, giving the store the appearance of being closed. When defendant returned to the back room he pointed the gun at Mirza, loaded a bullet and asked where the money was kept. When Mirza replied that it was kept in the cash register, defendant collected that money and returned, asking about additional money. Mirza responded that he did not know of any other money. Defendant threatened to kill him, but Mirza reiterated that he did not know of any more money.

After searching the front room again, defendant returned to Mirza, again demanded to know where more money was kept, and threatened him. Mirza continued to reply that he did not know of any more money. Defendant replied: "Okay. If you don't know the money, then I'm going to check your pants. . . . Do you have some money?" Defendant then took Mirza's wallet from his pants and pocketed the money he found in it, along with Mirza's driver's license. Defendant then said, "If you say anything about this incident, I'm going to shoot you. I'm going to kill you." Defendant also threatened to shoot Mirza until he told him where to shut down the video cameras.

Defendant then took a knife from his pocket, cut wires until the images disappeared from the surveillance monitors, and told Mirza to stand up and extend his neck. When Mirza complied, defendant cut Mirza's throat from one side to the other. Bleeding profusely, Mirza lay down and applied pressure to the wound with his hands. Defendant again asked him where the money was, and again Mirza said it was in the cash register. Defendant replied, "No. You know the money. You know the money. You work here." When Mirza denied knowing more, defendant said, "I'll shoot you. I'll cut you," and with the same knife, stabbed him three times in the neck. Defendant then took a long metal wire, placed it at the front of Mirza's neck and pressed back with it, causing more bleeding.

When Mirza lay back down, defendant again demanded to know where the money was, and again Mirza responded that he did not know. Defendant again threatened to shoot Mirza and ordered him to extend his neck. Still bleeding heavily, Mirza could

4

barely breathe or speak, and felt like he was dying; but afraid that he would be shot if he did not, he complied. Defendant then stabbed Mirza in the cheek. Mirza experienced more bleeding, pain, and loss of sensation. Defendant then stabbed Mirza multiple times on the other side of his neck. Mirza lay down again as defendant kept asking about money and threatening to kill him. Mirza lay there, unable to speak, falling in and out of consciousness. Defendant went to the front, came back, again asked for money, and when Mirza did not tell him, defendant fired the shotgun gun once and tried to fire a second time, but nothing happened. Defendant then stabbed Mirza in one hand and slashed the other hand.

Defendant finally left the store and Mirza managed to stagger out the front door of the shop, where he screamed for help. Passersby helped him and he was taken by ambulance to the hospital, where he underwent surgery. Two days later, Mirza selected defendant's photograph from a photographic lineup and identified him as his assailant.

Manhattan Beach Police Detective Michael Rosenberger investigated the incident. He testified that the front part of the store and the back room were separated by an L-shaped hallway, with one segment of about six feet long, and another about five feet long. The distance between the cash register and the back room was about 40 feet. Detective Rosenberger interviewed defendant after his arrest on August 23, 2012. A recording of the interview was played. In essence, defendant admitted that he put the shotgun in a box, went to the store to steal, took about $240, and cut the victim's throat in order to eliminate the person who could identify him; he then left and threw the shotgun, knife, and Mirza's wallet into the Los Angeles River.

The defense presented no evidence.

## DISCUSSION

### I. Kidnapping for robbery

Defendant contends that the evidence was insufficient to support his conviction of count 2, kidnapping to commit robbery. In particular, he contends that the evidence showed that the movement of the victim was merely incidental to the commission of the robbery.

5

When a criminal conviction is challenged as lacking evidentiary support, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) We must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We do not reweigh the evidence or resolve conflicts in the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Kidnapping for robbery, a form of aggravated kidnapping, consists of two elements: (1) "the movement of the victim is beyond that merely incidental to the commission of [the robbery]"; and (2) the movement "increases the risk of harm to the victim over and above that necessarily present in [the robbery]." (§ 209, subd. (b)(2).)[2] The two prongs of aggravated kidnapping "are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed environment without also considering whether that change resulted in an increase in the risk of harm to the victim." (*Martinez, supra*, 20 Cal.4th at p. 236.) Each case turns on its own facts, which

---

**2**      In section 209, subdivision (b)(2), the Legislature codified the "*Daniels* test" which, as formulated in *People v. Daniels* (1969) 71 Cal.2d 1119, 1139 (*Daniels*), required a *substantial* increase in the risk of harm. (See Stats. 1997, ch. 817, § 2.) However, the Legislature omitted that requirement, and the second element now simply requires a risk of harm greater than necessarily present in the robbery. (*People v. Martinez* (1999) 20 Cal.4th 225, 232, fn. 4 (*Martinez*).) A substantial increase in risk remained the requirement only for crimes committed prior to the effective date of the statute. (See *People v. Vines* (2011) 51 Cal.4th 830, 869 & fn. 20; *People v. Robertson* (2012) 208 Cal.App.4th 965, 981.)

6

"must be considered in the context of the totality of its circumstances." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.)

Defendant contends that only the first prong need be considered here, suggesting that the only reasonable conclusion from the totality of the circumstance was that the movement of Mirza to the back room was merely incidental to the robbery. However, defendant's approach fails to take in the *totality* of the circumstances, as it is narrowly focused on the circumstance that Mirza was moved to another room of the same business. Defendant observes that some courts have found that the movement of a victim within a business to be incidental to a robbery. However, in the cases cited by defendant, the movement was considered incidental because it was no greater than that necessary to facilitate the theft *and* did not substantially increase the risk of harm to the victim over that inherent in the robbery. (See *People v. Morrison* (1971) 4 Cal.3d 442, 443; *People v. Williams* (1970) 2 Cal.3d 894, 899-900, 902-903; *People v. Killean* (1971) 4 Cal.3d 423, 424; *People v. Smith* (1971) 4 Cal.3d 426, 427; *People v. John* (1983) 149 Cal.App.3d 798, 805-806.)

In fact, there is no "rigid 'indoor-outdoor' rule" that renders the movement of a victim within the same premises incidental as a matter of law. (*People v. James* (2007) 148 Cal.App.4th 446, 455-456.) Further, there is no minimum distance a victim must be moved to satisfy the first prong of the test. (*Martinez, supra*, 20 Cal.4th at p. 232.) Movement may be incidental to a crime if it is insubstantial and intended solely to facilitate the commission of the crime. (*People v. James*, at p. 453.) For example, movement of two bank employees from a public area into the area of the vault which required two employees to open, was found to be incidental to the robbery. (*People v. Washington* (2005) 127 Cal.App.4th 290, 299-301.) A hypothetical example of incidental movement was given in *Daniels*: "'A enters a liquor store and orders the clerk, who is stocking the shelves, to go to the cash register and hand over the money. The clerk moves ten feet to the cash register and turns over the money to A . . . .' [Citation.]" (*Daniels, supra*, 71 Cal.2d at p. 1134, fn. 8.)

Defendant relies primarily on a comparison with the facts of *People v. Hoard* (2002) 103 Cal.App.4th 599, in which the defendant moved two employees 50 feet to the back office of a jewelry store and tied them up, and the movement was found to have no apparent purpose other than to facilitate the robbery. Defendant argues that securing Mirza in the back room had no purpose other than having free access to the premises in order to search for as much money as he could find. He thus concludes that the movement was merely incidental to the robbery. Defendant oversimplifies the analysis in *Hoard*, in which the court also considered the absence of any substantially increased risk of harm to the victims posed by the movement. (*Id*. at p. 607.)

In any event, the movement of Mirza was neither insubstantial nor intended solely to facilitate the commission of the crime. The evidence did not merely show that Mirza was simply moved out of sight to keep him out of view or from interfering while defendant grabbed as much money as he could. He was moved a substantial distance from the public area of the store, through two sections of hallway to a secluded room, so that defendant could violently interrogate him regarding the location of money and about the surveillance cameras, and ultimately eliminate him as a witness to the robbery. The movement of Mirza was substantial and excessive under the circumstances, and it clearly increased his risk of harm over and above facilitating the grabbing of money. It thus cannot be deemed merely incidental to robbery. (*Daniels, supra*, 71 Cal.2d at pp. 1138-1139; *Washington, supra*, 127 Cal.App.4th at p. 299.) We conclude from all the circumstances that the evidence was substantial, such that a reasonable trier of fact could find the defendant guilty of kidnapping for robbery beyond a reasonable doubt.

## II. Section 654

Defendant contends that the consecutive sentence imposed as to count 3 must be stayed pursuant to section 654.

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Section 654 prohibits punishment for two crimes arising

8

from an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds by *People v. Correa* (2012) 54 Cal.4th 331, 334, 336.)

"Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance. [Citation.]" (*People v. Beamon* (1973) 8 Cal.3d 625, 636-637 (*Beamon*).) Thus, whether a course of criminal conduct is divisible presents a factual issue for the trial court, and we will uphold its ruling if supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Here, the trial court found that defendant intended two separate robberies, one to steal from the shop and one to steal Mirza's wallet. It was on the basis of the wallet robbery that the court convicted defendant of count 3 and found section 654 inapplicable. Implicit in the court's finding is that the two robberies were incident to separate objectives. To support his contention that the trial court erred, defendant relies on the rule that the mere taking of multiple items in the course of a robbery does not create multiple robberies subject to separate sentences. (See *People v. Bauer* (1969) 1 Cal.3d

368, 377-378.)[3]  Citing *Beamon, supra*, 8 Cal.3d at pages 639-640, and other cases decided on their particular facts, defendant observes that multiple punishment for kidnapping for robbery and for committing the underlying robbery has often been barred. (See also *People v. Milan* (1973) 9 Cal.3d 185, 197; *People v. Thomas* (1994) 26 Cal.App.4th 1328, 1335-1336; *People v. Davis* (1987) 191 Cal.App.3d 1365, 1368-1369.)

The application of section 654 depends upon the circumstances of the particular case; for example, as respondent notes, "multiple punishment may be imposed where the defendant commits one offense with one intent, then, as an afterthought, forms the independent intent to commit a second offense. [Citations.]" (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1393.)  Thus, the facts may demonstrate separate objectives even though they were carried out simultaneously. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211-1212.)  In *Latimer*, the California Supreme Court cited with approval an example more analogous to the facts of this case than those cited by defendant. (*Id*. at p. 1212, citing *People v. Porter* (1987) 194 Cal.App.3d 34, 37-39 (*Porter*).)  In *Porter*, the defendant robbed the victim of his wallet where the victim's ATM card was found.  The defendant then forced the victim to go to a nearby ATM to obtain more money. (*Porter, supra*, at p. 38.)  The court held:  "A reasonable inference from the record is that appellant and his companion initially planned only to rob the victim of the contents of his wallet, but thereafter came up with a new idea:  kidnapping the victim to his bank to compel him to withdraw money from his account by means of what they thought was an automated teller card. [Citation.]" (*Ibid*.; also cf. *People v. Smith* (1992) 18 Cal.App.4th 1192, 1197-1198.)

Similarly here, substantial evidence supports the trial court's implied finding that defendant formed a new objective after kidnapping Mirza for the purpose of stealing the store's money.  Between each of several searches of the store, defendant returned to Mirza, demanded to know where more money was kept, and threatened to kill him.  After

---

[3]  Defendant relies on *People v. Brito* (1991) 232 Cal.App.3d 316, to illustrate this point.  As that case did not involve section 654 or multiple punishment, it is unhelpful here.

Mirza repeatedly said that he did not know, defendant announced what appeared to be an alternative objective: "Okay. If you don't know the money, then I'm going to check your pants. . . . Do you have some money?" Defendant indicated his frustration with Mirza's ignorance of the whereabouts of the store's money by stabbing him in the neck after he said, "You know the money. You work here." A reasonable inference may be drawn from defendant's actions and his words, particularly "Okay" and "then," that defendant intended to steal money only from the store, but decided to steal from Mirza only after he became frustrated with Mirza's responses. We conclude that the circumstances of this case support the trial court's ruling that section 654 did not apply to count 3.

## III. Additional custody credit

Defendant contends that the trial court incorrectly calculated the number of days spent in custody prior to sentencing. Respondent agrees. "Calculation of custody credit begins on the day of arrest and continues through the day of sentencing. [Citation.]" (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) Defendant was arrested August 23, 2012, and sentenced June 26, 2013. He was thus entitled to actual custody credit of 308 days, not the 306 days calculated by the trial court. Defendant was entitled to 15 percent of that number in conduct credit, which comes to 46 days, not the 45 days awarded. (See § 2933.1, subd. (a).) As this was clerical error, we modify the judgment to add three additional days of credit. (See *People v. Duran* (1998) 67 Cal.App.4th 267, 270.)

## DISPOSITION

The judgment is modified to reflect an award of 308 days of actual custody credit, plus 46 days of conduct credit, for a total of 354 days of presentence custody credit. As modified and in all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modified presentence custody credit, and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.