Filed 9/20/22  P. v. Harvey CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LAMAR ROBERT HARVEY,<br><br>        Defendant and Appellant. | C093328<br><br>(Super. Ct. No. 16FE020334) |

Defendant Lamar Robert Harvey robbed a Taco Bell in Sacramento.  A jury convicted him on four counts of robbery and three counts of aggravated kidnapping, and the trial court sentenced him to an aggregate determinate term of 43 years in prison, plus an indeterminate term of seven years to life.

Defendant now contends (1) the evidence was insufficient to support the convictions for aggravated kidnapping because his movement of the victims around the Taco Bell store was incidental to the robberies and did not increase the risk of harm to them; (2) the prosecutor engaged in misconduct during rebuttal argument, and if the challenge is forfeited, his trial counsel was ineffective; (3) a change in the law requires remand for resentencing because issues of his youth may have been contributing factors to the crimes; and (4) recent changes to Penal Code section 654[1] require us to remand for resentencing.

---

[1]  Undesignated statutory references are to the Penal Code.

1

We conclude (1) the evidence was insufficient to support the convictions for aggravated kidnapping; (2) defendant forfeited his prosecutorial misconduct challenge because there was no objection in the trial court, and his counsel was not deficient because the prosecutor did not commit misconduct; and (3) the sentence must be vacated and the matter remanded for resentencing based on amendments enacted after his original sentencing.

We will reverse the aggravated kidnapping convictions. We will also vacate the sentence and remand for resentencing. In all other respects, we will affirm the judgment.

BACKGROUND

Defendant entered a Taco Bell in Sacramento just before 9:00 p.m. on September 12, 2016. He had a gun and was wearing a hood drawn tight with only his eyes, nose, mouth, and some hair visible. At the time, four Taco Bell employees were in the store. Wayne L. was at the drive-through window; Ernesto A. and Cesar Z. were in the food preparation area; and assistant manager Meghan G. was in the back office.

Defendant was in the store about two or three minutes. Holding the gun, defendant went to Cesar and told him to open one of the cash registers, but Cesar told defendant he did not know how. Defendant then approached Wayne, who had been at the drive-through window, and took him at gunpoint to the back room. On the way, defendant pointed the gun at Cesar and Ernesto and told them to kneel down and put up their hands.

As defendant and Wayne approached the back room, Meghan saw them and put up her hands. Defendant pointed the gun at Meghan and told her to open the safe and told the others not to do anything or he would kill her. While defendant held the gun to the back of her neck, Meghan tried to open the safe, but it would not open. Defendant asked if she thought he was stupid, and he threatened to shoot her.

Meghan directed defendant's attention to two cash drawers on top of the safe; defendant reached over Meghan and pulled cash out of the drawers. Defendant told

2

Cesar, Ernesto, and Wayne to come into the back room and directed them to open their wallets, still with the gun pointed at Meghan's neck. Defendant also asked for Meghan's wallet.

Defendant told the four employees not to say anything, left them in the back room, closed the door, and departed. After waiting to make sure defendant was gone, the employees left the back room and reported the robbery.

Shortly after the robbery, Meghan identified defendant from a photo lineup, but none of the witnesses were able to identify defendant at trial a year and a half later. Defendant's palm print was discovered on a cash drawer.

Defendant's wife testified defendant was working in Benicia on the evening of the robbery. She picked him up from work in Benicia at about 8:30 p.m., and they went home to Oakland, arriving around 9:30 p.m.

A jury convicted defendant on four counts of second degree robbery (§ 211 -- count one for the robbery of Meghan, count two for the robbery of Wayne, count three for the robbery of Cesar, and count four for the robbery of Ernesto) and three counts of aggravated kidnapping for the purpose of robbery (§ 209, subd. (b)(1) -- count five for the kidnapping of Wayne, count six for the kidnapping of Cesar, and count seven for the kidnapping of Ernesto). Each count was accompanied by a true finding that defendant personally used a firearm. (§ 12022.53, subd. (b).)

On the count one conviction for the robbery of Meghan, the trial court imposed the determinate middle term of three years, with an additional 10-year enhancement for personal firearm use. On the count two, three, and four convictions for the robberies of Wayne, Cesar, and Ernesto, the trial court imposed determinate middle terms of three years with additional 10-year enhancements for personal firearm use, but stayed execution of those sentences under section 654. On the count 5 conviction for the aggravated kidnapping of Wayne, the trial court imposed an indeterminate term of seven years to life (life with the possibility of parole) with an additional determinate term of 10

3

years for personal firearm use. On the count six and seven convictions for the aggravated kidnapping of Cesar and Ernesto, the trial court imposed concurrent indeterminate terms of seven years to life with consecutive determinate terms of 10 years each for personal firearm use enhancement. The total aggregate sentence was a determinate term of 43 years in prison, plus an indeterminate term of seven years to life.

DISCUSSION

I

Defendant contends the evidence was insufficient to support the convictions for aggravated kidnapping because his movement of the victims around the Taco Bell store was no more than incidental to his robbery and did not increase the risk of harm to them.

Kidnapping to commit robbery is aggravated kidnapping. (§ 209, subd. (b).) It requires movement of the victim that is not merely incidental to the robbery, and that increases the risk of harm beyond the risk inherent in a robbery. (*People v. Delgado* (2013) 56 Cal.4th 480, 487.) These two elements are interrelated and must be considered in connection with the totality of the circumstances. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).)

Regarding whether the movement of a victim was merely incidental to the robbery, the jury must consider the distance the victim was moved and the environment where the movement occurred. (*Dominguez, supra*, 39 Cal.4th at p. 1151.) There is no minimum distance, so whether the movement is incidental depends more on the context of the movement and the movement's scope and nature. (*People v. Rayford* (1994) 9 Cal.4th 1, 12.) Applying this test, courts have generally held that moving a victim around in a business establishment to facilitate a robbery is insufficient to support a finding the movement was anything more than incidental to the robbery. (See, e.g., *People v. Williams* (2017) 7 Cal.App.5th 644, 668-670 [movement of employees 40 to 60 feet to the back of a store to commit robberies was merely incidental]; *People v. Washington* (2005) 127 Cal.App.4th 290, 299-301 [movement of employees 35 to 45 feet

4

from the teller area to a vault during a bank robbery was merely incidental]; *People v. Hoard* (2002) 103 Cal.App.4th 599, 607 [movement of two employees 50 feet to the back office of a jewelry store during a robbery was merely incidental].)

Here, defendant moved Wayne, Cesar, and Ernesto from their various positions in the Taco Bell to the back office to facilitate the robberies. Although the parties do not direct us to evidence of the relevant distances within the Taco Bell store, the surveillance videos indicate Wayne walked the length of the food preparation area, and Cesar and Ernesto walked a portion of that distance. The People argue that movement was not incidental to the robbery because defendant could have demanded their wallets from where they originally stood; taking them to the back of the store isolated them and allowed defendant to avoid detection from customers; and the movement substantially changed the victims' environment. We are certainly sympathetic to the terrible ordeal the victims had to endure, but the record indicates the offenses occurred quickly, the distances were not significant, and the movements facilitated the robberies. Defendant moved Wayne to where the store safe was located. In addition, the surveillance videos indicate defendant remained close enough to Cesar and Ernesto to continue communicating with them and direct them. Although defendant did not move back toward Cesar and Ernesto to demand their wallets, he instructed them to come to him and demanded their wallets. The totality of the circumstances indicate the movements were incidental to the robberies.

The People rely on *People v. Vines* (2011) 51 Cal.4th 830, overruled on another ground in *People v. Hardy* (2018) 5 Cal.5th 56, 104. In that case, the defendant took the store employees to the basement and locked them in a freezer where the temperature was about 20 degrees. To escape, the employees had to use a fire ax. (*Vines,* at p. 870.) The California Supreme Court concluded the movement was not merely incidental to the robbery and also increased the risk to the victims because they were placed in further danger by being locked in a freezer. (*Id*. at p. 871.) But *Vines* is inapposite. In this case,

5

the victims were not moved into a basement or locked in a freezer; they were moved across the Taco Bell food preparation area to facilitate the robberies.

Under the circumstances, we must conclude that the evidence was insufficient to convict defendant of the aggravated kidnapping of Wayne, Cesar, and Ernesto. We will reverse the convictions on counts five through seven.

II

Defendant contends the prosecutor engaged in misconduct by implying the jury could find him guilty because defendant failed to testify and produce evidence.

A prosecutor may commit misconduct by commenting on a defendant's failure to testify. (*Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106] (*Griffin*).) The offending comment may be either a direct reference to failure to testify or an argument that the defense has failed to contradict or deny certain evidence when such denial or contradiction could only be made by the defendant from the witness stand. Conversely, no error occurs when the comment is based on the state of the evidence or upon the failure of the defense to introduce material evidence or to call anticipated witnesses. Indirect, brief, and mild references to a defendant's failure to testify, with no suggestion an inference of guilt should be draw from it, have uniformly been held harmless. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339-1340; *People v. Clair* (1992) 2 Cal.4th 629, 662 (*Clair*).) When the prosecutor's comments are claimed to be an indirect violation of *Griffin*, the standard of review is whether there is a reasonable likelihood the jury misconstrued or misapplied the prosecutor's comment to refer to the defendant's failure to testify. (*Clair,* at p. 663.)

The People argue defendant forfeited his prosecutorial misconduct claim because counsel for defendant did not object to the prosecutor's statements in the trial court. We agree. A defendant cannot complain of *Griffin* error on appeal unless defendant made a timely objection and requested the trial court to admonish the jury to disregard the statement. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1006.)

6

Defendant nevertheless claims the failure to object was a violation of his right to effective assistance of counsel. To establish ineffective assistance of counsel, defendant must show counsel's representation fell below an objective standard of reasonableness and there is a reasonability probability the outcome would have been different if counsel had objected. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674].) We conclude counsel's representation was not deficient because there was no *Griffin* error.

During rebuttal to defense counsel's closing argument, the prosecutor made the following comments:

"You can believe the People's evidence, or you can believe [defendant's wife]. Because this case is about if you believe the video, the fingerprint evidence, and the victim's identification, or you believe he wasn't there. [¶] There really is no in-between in this case. We all agree on the facts. So which one is correct? [¶] And [defense counsel] is absolutely correct, the defendant has an unquestionable right not to testify. It's one of our foundations that this country is built on. You have an absolute right not to testify. [¶] But [defense counsel] did put on a case. He presented a defense. So, once [defense counsel] presents a defense, you get to start asking yourself, what did I hear? What didn't I hear? And does this make sense? When I look at everything together, does this make sense? [¶] So look at what you heard versus what you didn't hear. The only witness that [defense counsel] presented was the defendant's wife."

The prosecutor further argued:

"You didn't hear from a single co-worker that was working with him that night. You didn't hear from his manager that could tell you, yes, he was at work until 8:30. [¶] There [were] two other people in the household apparently. The defendant's wife's grandmother and a woman named Joanne. Never heard of Joanne before Ms. Harvey hit the stand yesterday. You didn't hear from any of those people. Not a single piece of

7

documentation or not a single person can corroborate what [defendant's wife] told you. Not one."

Concerning defendant's palm print found on the cash drawer, the prosecutor argued:

"If there was a defense to the fact that Mr. Harvey's palm print was on that cash drawer, no matter how improbable or unlikely, you would have heard about it. [Defense counsel] got up here and said, maybe it could have been this, maybe it could have been that. None of that was presented to you. He's asking you to speculate. That is speculative doubt. It's imaginary doubt. It is not reasonable doubt. [¶] If there was any other explanation for how Lamar Harvey's fingerprint got on that cash drawer, you certainly would have heard about it, but you didn't."

Defendant asserts the prosecutor's repeated statements about what evidence the defense did not present drew the jury's attention to defendant's failure to testify and therefore amounted to *Griffin* error. Defendant also asserts the prosecutor misstated the People's burden, shifting it to defendant. We find no such error.

Regarding defendant's right not to testify, the trial court correctly instructed the jury on that constitutional right. The prosecutor's statements did not state or imply the contrary. Instead, the prosecutor's statements focused on the absence of corroborating evidence to support defendant's alibi defense. A prosecutor's argument that the defense failed to contradict the prosecution's evidence of a defendant's involvement in a crime is a permissible comment on the state of the evidence, even if the defense could have contradicted the prosecution's evidence by putting the defendant on the stand, if there were other ways the defendant could have rebutted the evidence, such as, in this case, having fellow employees testify defendant was at work when the crimes were committed. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1229.) "The rule in *Griffin v. California, supra*, 380 U.S. 609, does not extend to comments on the state of the evidence [citation] . . . ." (*Ibid.*) And there is no reasonable likelihood the jury misconstrued or

8

misapplied the prosecutor's comments as inviting the jury to find defendant guilty because he did not testify. (*Clair, supra*, 2 Cal.4th at p. 663.)

As for defendant's argument that the prosecutor misstated the People's burden, the trial court properly instructed the jury that defendant was presumed innocent and the People had the burden of overcoming the presumption by proving defendant guilty beyond a reasonable doubt. Defense counsel also noted the People's burden to prove defendant guilty beyond a reasonable doubt and acknowledged that the burden did not include removing all doubt or imaginary doubt.

Defendant argues that the following prosecutorial argument misstated the People's burden: "So, once [defense counsel] presents a defense, you get to start asking yourself, what did I hear? What didn't I hear? And does this make sense? When I look at everything together, does this make sense? [¶] So look at what you heard versus what you didn't hear. The only witness that [defense counsel] presented was the defendant's wife." But this statement did not bear on the People's burden; instead, it was an argument that the People's evidence was stronger and more credible than the defense evidence because of the People's corroborating evidence. There was no burden-shifting argument here.

Because the prosecutor did not commit *Griffin* error, any defense objection would have been futile, and, therefore, defense counsel did not violate defendant's right to effective counsel.

III

Defendant contends a change in the determinate sentencing law after his sentencing requires us to vacate the sentence and remand for resentencing because issues of his youth may have been contributing factors to the crimes.

While this appeal was pending, the Governor signed Senate Bill No. 567 (2021-2022 Reg. Sess.), which changed some of the requirements affecting the sentencing

court's discretion under section 1170, effective January 1, 2022.[2] (Stats. 2021, ch. 731.) Among other things, Senate Bill No. 567 created a presumption in favor of the lower prison term when psychological, physical, or childhood trauma experienced by the defendant or the youth of the defendant (being under 26 years of age) contributed to the commission of the offense. (§§ 1170, subd. (b)(6)(A) & (B); 1016.7, subd. (b).)

Defendant argues that, because his judgment is not final, he is entitled to retroactive application of the amendments to section 1170. The People acknowledge the change in the law is ameliorative and applies retroactively to defendant's case. We agree. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039.)

Defendant further argues we must vacate his sentence and remand this matter so the trial court can exercise its sentencing discretion in light of the new legislation.

The trial court imposed the determinate middle term for the four robbery counts (counts one through four). Applying the law in effect at the time, it did not mention defendant's youth or possible psychological issues.

The probation report reflects two circumstances that may relate to the new lower-term presumption of section 1170, subdivision (b)(6): defendant was 25 years old when he committed the robberies, and the probation report reflects that he experienced some psychological issues. Under the current law, the trial court must determine whether those circumstances contributed to the commission of the offense and, if they did, start its

---

[2] Three bills amending section 1170 became effective on the same date. (Stats. 2021, ch. 695, § 5 (Assem. Bill No. 124 (2021-2022 Reg. Sess.)), effective Jan. 1, 2022; Stats. 2021, ch. 719, § 2 (Assem. Bill No. 1540 (2021-2022 Reg. Sess.)), effective Jan. 1, 2022; Stats. 2021, ch. 731, § 1.3 (Sen. Bill No. 567), effective Jan. 1, 2022.) Senate Bill 567 -- which takes precedence because it was enacted last (Gov. Code, § 9605) -- states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022, and Senate Bill 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill 567, Assembly Bill 124, and Assembly Bill 1540, shall become operative. (Stats. 2021, ch. 731, § 3.)

determinate sentencing with a presumption in favor of the lower term. The People agree defendant is entitled to a remand for resentencing applying the current law, as do we.

IV

Defendant contends recent changes to section 654 require us to vacate the sentence and remand for resentencing. Because we have already concluded we must vacate the sentence and remand for resentencing, we need not consider this contention. Defendant may make his arguments on this issue at resentencing.

DISPOSITION

The judgment is reversed as to the aggravated kidnapping convictions (counts five through seven). In addition, the sentence is vacated, and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.


/S/
MAURO, Acting P. J.


We concur:


/S/
KRAUSE, J.


/S/
EARL, J.

11