Filed 3/28/25  P. v. Malacara CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>YESENITA MALACARA,<br><br>　　Defendant and Appellant. | D082276<br><br><br>(Super. Ct. No. SCD291032) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert O. Amador, Judge.  Vacated in part and otherwise affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

One morning, Jesse[1] Malacara chased 11-year-old Isaiah M. across a busy street before putting him in a headlock, pulling him about 35 feet into an occupied store, and releasing him. On this evidence, a jury found Malacara guilty of kidnapping a child under the age of 14 (Pen. Code, §§ 207, subd. (a), 208, subd. (b); count 1) and false imprisonment by violence (§§ 236, 237(a); count 2). The court sentenced Malacara to an aggregate prison term of 43 years to life. Malacara challenges his convictions and sentence on multiple grounds.

First, Malacara claims his kidnapping conviction must be overturned for insufficient evidence. We disagree. The distance Malacara moved Isaiah in combination with several contextual factors is sufficient to affirm Malacara's conviction of count 1.

Second, we accept the People's concession that false imprisonment by violence is a lesser included offense of kidnapping and accordingly vacate Malacara's conviction of count 2. This moots his challenge to the sufficiency of the evidence underlying that conviction.

Third, Malacara argues the trial court abused its discretion in denying his motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. We conclude the trial court deliberately and nonarbitrarily balanced relevant considerations about Malacara's background, his prior convictions, and the current offenses; accordingly, it did not abuse its discretion.

Fourth, Malacara contends the trial court abused its discretion in (1) failing to strike his serious felony priors under section 1385 and (2) sentencing him to the upper term on count 1 without expressly applying the low-term presumption of section 1170(b). Because Malacara failed to

---

[1]     Appellant's preferred name and pronouns were used in the trial court. We do the same in the body of the opinion.

object to his sentence on these grounds below, he forfeited these issues. Further, on this silent record, we must presume the court appreciated the scope of its sentencing discretion.

We thus vacate Malacara's conviction of count 2 and otherwise affirm.

## I.

## A.

In the summer of 2021, Isaiah and his family lived on a busy street. Isaiah—who was 11 years old; four feet, five inches tall; and weighed 75 pounds—had just started walking to a store across the street by himself.

One morning, Isaiah went to the store for sodas. On his way there, he saw Malacara— who was 34 years old; five feet, six inches tall; and weighed 150 pounds—sitting on a log and looking at him.

On his way back home, Isaiah saw Malacara walking toward him. Isaiah "assumed [Malacara] was going to do something" to him. Rather than continue home, Isaiah decided to run across the street and back toward the store, where he thought people could assist him. Isaiah looked behind him and saw Malacara chasing him.

The sole entry to the store was up a 15-foot ramp in a parking lot. Malacara caught up to Isaiah near the ramp's base, about 12 feet from the store's entrance. He put Isaiah into a "tight" two-armed headlock and whispered, "'Come here.'" According to Isaiah, Malacara then "started following [him] where [he] was going"—"back into the store."

Upon reaching the door, Malacara kept his left arm around Isaiah's neck but let go with his right. Malacara was "still controlling [Isaiah's] movements."

Once inside the store, Malacara "tried taking [Isaiah] into an aisle" Isaiah did not want to go down. The aisle was to the right of the doorway and in the opposite direction of the cash registers, where Isaiah wanted to go.

Store workers yelled for Malacara to "'[g]et off of'" Isaiah or "'[l]et him go.'" They asked Isaiah if he knew Malacara, and he "said no." A store worker testified Isaiah was visibly "scared" and "terrified."

Malacara let go of Isaiah near the entry to the aisle. According to the district attorney's investigator, the distance from the front door to the spot of release was 23 feet, although the distance appears far shorter on video. Isaiah, who still felt "scared," went behind the cash registers with the workers.

The distance between the ramp's base and the store's aisle is roughly 35 feet.

B.

Malacara was charged with kidnapping and false imprisonment by violence. A jury found him guilty of both counts.

Malacara admitted two prior strikes, and the trial court found two aggravating factors true beyond a reasonable doubt: (1) Isaiah was particularly vulnerable, and (2) Malacara's prior convictions were numerous and of increasing seriousness.

Both the People and the probation department recommended a sentence on count 1 of 33 years to life (the upper term tripled under the Three Strikes Law) plus 10 consecutive years for the two prior serious felonies. They recommended a stayed term on count 2.

Malacara asked the court to (1) strike one or more of his strikes, (2) strike both his prior serious felonies, and (3) impose the lower or middle term.

4

As to the first and second requests, Malacara argued (1) the offenses at issue were remote; (2) they were serious, but not violent, felonies; (3) Three Strikes punishment was disproportionate to the charged offenses' severity and Malacara's criminal history; (4) his criminal history was the result of substance addictions; (5) he had been felony-free for the last 10 years; (6) he was willing and able to rehabilitate himself; and (7) Malacara's mental health conditions—identified by a psychologist as bipolar disorder, amphetamine and alcohol use disorder, amphetamine induced psychotic disorder, and unspecified trauma- and stressor-related disorder—reduced his culpability. According to the psychologist's report, Malacara's grandfather, who raised him, physically abused him, and another relative sexually abused him.

As to the third request, Malacara argued numerous mitigating factors applied, including: (1) he committed the charged offenses during a substance-induced psychotic episode during which he thought his conduct was legal, which reduced his culpability; (2) Malacara's childhood trauma was a factor in the commission of the crime; (3) under section 1385(c), the offenses were connected to Malacara's childhood trauma; and (4) Malacara's status as a transgender man and his struggle with gender identity since adolescence.

After hearing argument, the court denied Malacara's motion to strike at least one of his prior strikes "to protect society, to punish the defendant, and prevent[ ] him from committing new crimes by isolating him for a significant period of incarceration[,] and increase public safety." The court recounted Malacara's lengthy criminal record—including his two strikes, which the court found to be "significant violent offenses"—and concluded Malacara was a danger to the community because he "has not stayed law abiding," "went to prison for very violent offenses," and "continue[d] to use drugs." It noted the charged offenses were "immensely bad, serious, [and]

5

terrible" and his priors were "not that remote in time." The court accordingly concluded Malacara fell "squarely" within the Three Strikes Law.

As to the term imposed, the court "believe[d]" Malacara experienced childhood trauma, but could "not find that it was a factor in the commission of this crime." It found section 1385(c) inapplicable and "slight value" in the mitigating factors argued by Malacara. The court determined the two aggravating factors found true beyond a reasonable doubt outweighed them. It thus tripled the upper term for the kidnapping offense to 33 years to life. Although the court noted "the defense motion to strike the serious felony priors," the court did not expressly rule on that motion, instead imposing a consecutive 10-year term for the two serious felony priors. The court also imposed but stayed an upper-term sentence on the false imprisonment by violence offense. Defense counsel did not object to the sentence.

## II.

We address in turn Malacara's arguments on appeal.

## A.

First, Malacara contends insufficient evidence supports his kidnapping conviction. The elements of simple kidnapping are (1) unlawful movement of a person by use of force or fear (2) without the person's consent (3) for a substantial distance. (*People v. Jones* (2003) 108 Cal.App.4th 455, 462; see also Pen. Code, § 207(a).) An increased sentencing range applies when, as here, the person moved was under the age of 14. (§ 208(b).) Malacara challenges the sufficiency of the evidence underlying the third element, which is known as asportation. (*People v. Arias* (2011) 193 Cal.App.4th 1428, 1434.) On this record, we conclude the asportation evidence is sufficient to support Malacara's conviction.

6

1.

"In considering a sufficiency of the evidence claim, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Collins* (2025) 17 Cal.5th 293, 307 [cleaned up].) We do not reweigh the evidence, assess witness credibility, or choose between competing inferences. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)

For the asportation element, the factfinder "should consider the totality of the circumstances" to determine whether the "'scope and nature'" of the movement was "'substantial in character.'" (*People v. Martinez* (1999) 20 Cal.4th 225, 237, 236, 235.) Accordingly, "the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Martinez,* at p. 237.) These additional factors are "nonexclusive" (*People v. Singh* (2019) 42 Cal.App.5th 175, 187), are not necessarily required to convict (*Martinez*, at p. 237), and can be considered even if they do not materialize (*id.* at p. 233).

2.

We conclude the evidence is sufficient to support the jury's finding that the movement here was substantial in character.

Initially, the parties dispute whether the kidnapping includes the chase—the period from when Isaiah darted across the street to avoid Malacara until Malacara intercepted him and put him in a headlock near the

base of the store ramp. Although we requested supplemental briefing on this issue, we conclude we need not reach it because, considering the totality of the circumstances in the light most favorable to the judgment, sufficient evidence supports the asportation element even if we exclude that portion of the incident from the kidnapping.

The distance here is roughly 35 feet. The People cite no authority, and we have found none, where a comparable distance was itself enough—absent contextual factors—to affirm a kidnapping conviction. The cases on which the People rely all depend—in addition to distance—on contextual factors to affirm the kidnapping conviction.

Yet the evidence here includes contextual factors sufficient to conclude the distance was substantial in character. Although we reject the People's assertion that Malacara took Isaiah "out of public view" when he moved Isaiah from one public place into another, Malacara nonetheless appreciably changed Isaiah's environment by taking him to a more secluded and less visible public area when he dragged Isaiah into the store and attempted to pull Isaiah down the aisle out of view of the cash registers. A reasonable juror could conclude Malacara's actions isolated Isaiah from other people, thereby decreasing the likelihood of detection. (See *Martinez*, 20 Cal.4th at p. 237.)

Even if we are not convinced the remaining factors identified in *Martinez* support Malacara's kidnapping conviction, they are not exclusive. (*Singh*, 42 Cal.App.5th at p. 187.) Here, the jury was entitled to consider several other factors supporting Malacara's movement of Isaiah given the totality of the circumstances.

For example, the jury could reasonably consider the fact Isaiah was a lone child, outside the presence of family members likely to intervene, at the

8

time the incident occurred, making him vulnerable to Malacara's attack. It was also entitled to consider the significant size difference, as Malacara weighed twice as much as Isaiah and was more than a foot taller. The jury could account for the fact the movement attempted to take Isaiah down an aisle and further from the store's exit, decreasing his ability to escape. (See *People v. Waqa* (2023) 92 Cal.App.5th 565, 583 [finding asportation sufficient where defendant dragged rape victim 8 to 10 feet from smaller bathroom stall to larger one because it took her further from exit and provided additional room to accomplish rape and other crimes].) And even if we do not consider the chase a part of the kidnapping itself, the pursuit is relevant to the totality of the circumstances under which the kidnapping took place.

This contextual evidence is not strong. Yet, considered in combination with the roughly 35 feet traveled, it is sufficient to satisfy the asportation requirement under our deferential review.

The cases on which Malacara relies to contend otherwise are inapt. For example, *People v. Washington* (2005) 127 Cal.App.4th 290, 297, involved kidnapping to commit robbery. The asportation element in such cases contains an additional requirement inapplicable here: that the movement "is not merely incidental to the commission of the underlying crime." (*Martinez*, 20 Cal.4th at p. 232; see § 209(b)(2).) *Washington* found this additional requirement unmet because "there was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault," making the movement merely "incidental to the robbery." (*Washington*, at p. 299.) The court did not consider whether the movement would have been sufficient for purposes of a simple kidnapping alone. Here, however, Isaiah's movement was not incidental to any other crime but instead attributable to the kidnapping itself. *People v. Williams* (1970) 2 Cal.3d 894 is inapposite

not only for the same reason but also because it was decided when the asportation element for simple kidnapping depended solely on distance, without other contextual factors. (*Williams*, at p. 902 [movement incidental to robbery]; *Martinez*, 20 Cal.4th at p. 235 [nearly 30 years later, holding factors other than distance are relevant to determining asportation].)

We therefore affirm Malacara's conviction of count 1.

B.

Second, Malacara argues, and the People concede, his conviction of count 2 must be vacated because false imprisonment by force is a lesser included offense of simple kidnapping. (See *People v. Magana* (1991) 230 Cal.App.3d 1117, 1121.) "In this state, multiple convictions may not be based on necessarily included offenses arising out of a single act or course of conduct." (*People v. Lewis* (2008) 43 Cal.4th 415, 518.) Accordingly, we accept the People's concession and vacate Malacara's conviction of count 2. (See *Magana*, at pp. 1120-1121.) Given this outcome, we need not address Malacara's alternative argument that insufficient evidence supported his conviction of count 2.

C.

Third, Malacara claims the trial court abused its discretion in denying his *Romero* motion. We conclude otherwise.

"[A] trial court may strike or vacate an allegation or finding under the Three Strikes [L]aw that a defendant has previously been convicted of a serious and/or violent felony . . . 'in furtherance of justice.'" (*People v. Williams* (1998) 17 Cal.4th 148, 158, quoting § 1385(a).) We deferentially review *Romero* rulings for abuse of discretion and "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the

defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though [the defendant] had not previously been convicted of one or more" strikes. (*Williams*, at pp. 161-162.) As the circumstances must be "'extraordinary'" for a defendant to "'be deemed to fall outside the spirit'" of the Three Strikes Law, "the circumstances where no reasonable people could disagree that the [defendant] falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary." (*People v. Carmony* (2004) 33 Cal.4th 367, 378, quoting *People v. Strong* (2001) 87 Cal.App.4th 328, 338.) The burden is on the appellant "to clearly show that the sentencing decision was irrational or arbitrary." (*Carmony*, at p. 376 [cleaned up].)

Malacara claims he falls outside the spirit of the Three Strikes Law because: (1) his prior strikes were serious but not violent felonies stemming from his addictions and were remote in time; (2) of his childhood abuse; (3) of his bipolar disorder; (4) he was high on methamphetamine at the time, so the charged offenses were "the result of appellant's substance abuse induced psychiatric episode"; (5) a psychologist opined Malacara was unlikely to commit further crimes if he got his substance abuse under control; (6) Isaiah was not injured; (7) Isaiah was not threatened; and (8) no weapon was used in the current offense. The People counter that the court's denial of Malacara's *Romero* motion was "reasonabl[e]." They note Malacara's "criminal history spans almost 20 years and most of his prior convictions involved violence or threatened violence."

We discern no abuse of discretion here. First, as to the strikes themselves, the court acknowledged they were "serious but not violent" felonies. Nonetheless, the court acted within its discretion in concluding the offenses were "violent" in nature. As to the first, Malacara attacked and tried

11

to hit the victim with an ax. As to the second, he pounded a door in, wielding a knife with a 3- to 4-inch blade, and said he was "'going to fucking stab'" the victim. Malacara swung the knife at the victim, eventually slashing one of the victim's fingers. These are serious felonies committed in a violent way.

Second, as to the strikes' purported remoteness, "[a] prior strike conviction is not considered 'remote' . . . where the defendant has not demonstrated a prolonged period of rehabilitation (a crime free life) in the interim." (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.) Although Malacara's strikes date from 2012 and 2013—eight to nine years before the charged offenses—the record shows Malacara, in the words of the court, "has not stayed law abiding." In 2014, he "strangled his girlfriend, pushed her to the ground, and punched her in the face," leading to 120 days in jail. In 2019, he violated a restraining order by going to an ex-girlfriend's house and threatening to kill her if she called law enforcement, leading to the revocation of his probation and a jail stint. Months later, he assaulted his girlfriend by threatening to kill her with a hammer and slapping her in the face. He violated various restraining orders over the ensuing two years and served time in jail. He was released from drug court and committed the charged offenses only six days later. Given this history, the trial court appropriately concluded Malacara's strikes were "not that remote."

Third, as to the charged offenses, even though Isaiah was not physically injured and Malacara was unarmed, as the court acknowledged, "[t]his is every parent's nightmare." Isaiah was not unscathed; according to his mother, "Isaiah was very affected" by the incident and, "[f]or basically a year, he wouldn't leave or go somewhere without a friend or family member, and for over a year, he didn't feel comfortable to even go outside and was very insecure."

Fourth, as to childhood abuse, the court "recognize[d]" Malacara "had a terrible past." The court was entitled to afford that factor little weight, and it is not for us to reweigh the evidence. (*People v. Jordan* (1986) 42 Cal.3d 308, 317 [A reviewing court "err[s] when it reweigh[s] the circumstances in [aggravation and] mitigation rather than limiting its review to whether the sentencing court abused its statutory discretion."].)

Fifth, regarding Malacara's bipolar disorder, the court considered this factor but found Malacara's refusal to take medication did not help him. The court was entitled to accord little weight to the reasons Malacara provided the psychologist who authored an evaluation for his sentencing—that he (1) had hepatitis C and was concerned about his liver and (2) worried he may lose his hair. Although Malacara was allegedly open to non-medication treatments, the record was devoid of evidence Malacara tried any.

That leaves us with Malacara's history of substance abuse. The psychologist opined Malacara's "general risk of recidivism would subside" and he would be "unlikely to behave" "erratically" *if* he "addresses his substance use successfully." But the record is replete with evidence Malacara was unlikely to do so. Malacara admitted to probation that he first used methamphetamine at age 15 and used it daily, including the day of the incident. Probation noted Malacara had completed a residential treatment program in 2020 and began participating in drug court later that year, although he "was terminated unsuccessfully from the program in 2021" for poor performance. He was arrested for the charged offenses just days later following a methamphetamine bender. He scored high on an assessment predicting his risk of recidivism. Malacara was likely under the influence of alcohol or other substances when committing the offenses underlying his prior convictions in 2011, 2012, 2013, and 2014. Given this history, the court

13

was within its discretion to conclude from this evidence, as the prosecutor urged, that "Malacara presents now to society . . . a danger" rather than less culpability for his actions.

We agree with the People that *People v. Avila* (2020) 57 Cal.App.5th 1134, on which Malacara relies, is factually inapposite. Malacara's charged offenses were exponentially more serious than the attempted robbery and attempted extortion in *Avila*, in which the defendant demanded rent from fruit sellers and stomped several bags of oranges when they failed to comply. (*Avila*, at p. 1139.) Kidnapping is classified as a violent crime, whereas the offenses in *Avila* are not. (*Id.* at p. 1142; § 667.5(c)(14).) Unlike here, the *Avila* defendant's crimes were decreasing in seriousness. (*Avila*, at p. 1143.) While *Avila* said it was not always so, it "d[id] not disagree with the general notion that a defendant's drug problem may have little mitigating value where the problem is long-standing." (*Ibid.*) Consequently, *Avila* is unhelpful to Malacara.

In sum, the court's conclusion that Malacara fell within the spirit of the Three Strikes Law after a thorough consideration of relevant factors— including Malacara's prior and current offenses, his background, his character, and his prospects—was not an abuse of discretion.

### D.

Finally, Malacara contends the trial court erred by (1) failing to dismiss his two serious felony priors under section 1385(c) and (2) imposing the upper term on count 1. The People argue—and we conclude—Malacara forfeited these challenges by failing to object to his sentence on these bases in the court below.

"[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised

14

for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) Because "[r]outine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention," the forfeiture doctrine helps "to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Id.* at p. 353.)

Here, Malacara's counsel did not object to the court's failure to expressly rule on his motion to dismiss the serious felony prior enhancements or imposition of the upper term. These claims are therefore forfeited. (See, e.g., *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 464 [forfeiture of failure to consider section 1170(b) by failing to object to upper term in lower court].)

To the extent Malacara claims the trial court abused its discretion in making these sentencing decisions because it was unaware of the scope of its sentencing discretion, the record is silent on this issue. "[I]n light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) Because the record does not establish on its face that the court misunderstood its discretion, Malacara is not entitled to relief on this basis.

### III.

We vacate Malacara's conviction of false imprisonment by violence (count 2) and otherwise affirm the judgment. The superior court shall prepare an abstract of judgment consistent with this opinion and transmit it to the Department of Corrections and Rehabilitation.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.


16